THE MANHATTAN LIFE INSURANCE COMPANY, Plaintiff, *v.* GEORGE F. JOHNSON et al., Defendants.

WILLIAM C. DEWEY, Appellant, and FREDERICK T. KELLOGG, Respondent.

1. USURY — VALIDITY OF MORTGAGE DEPENDENT UPON PLACE OF PRINCIPAL TRANSACTION. The meaning and intent of the Usury Law (1 R. S. 772, § 5, amd. L. 1837, ch. 430) is that the validity of a mortgage is determined by the validity of the agreement of the parties, and such agreement is governed by the law of the place where it is made.

2. MORTGAGE UPON LANDS IN THE STATE GIVEN AS COLLATERAL TO PROMISSORY NOTES EXECUTED IN A FOREIGN STATE. A mortgage upon lands in this state, given to secure the payment of promissory notes exe-

cuted and payable in a foreign state, of which both the parties were residents, although tainted with usury according to the laws of this state, is enforceable, if valid according to the laws of the state where the principal transaction took place.

*Manhattan Life Ins. Co.* v. *Johnson,* 115 App. Div. 429, affirmed.

(Argued February 19, 1907; decided March 12, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 10, 1906, which affirmed an order of Special Term overruling exceptions to the report of a referee in surplus money proceedings and confirming such report.

The facts, so far as material, are stated in the opinion.

*Wilbur F. Earp* for appellant. The deed by virtue of which Kellogg claims a lien upon the surplus is usurious and void. (1 R. S. 771, § 1; L. 1879, ch. 538, § 1; 1 R. S. 772, § 5; L. 1837, ch. 430, § 1; *Chapman* v. *Robertson,* 6 Paige, 627; *Levy* v. *Levy,* 33 N. Y. 97; *Hosford* v. *Nichols,* 1 Paige, 221; *Brine* v. *Ins. Co.,* 96 U. S. 627; *Boyce* v. *City of St. Louis,* 29 Barb. 650; *Goddard* v. *Sawyer,* 9 Allen, 78; *Cope* v. *Wheeler,* 41 N. Y. 303; Story on Conf. of Laws, § 293c.)

*Arthur S. Luria* for respondent. The usury laws of New York are not applicable to the deed. (1 R. S. 771, § 1; Story on Conf. of Laws [8th ed.], § 287; *De Wolf* v. *Johnson,* 10 Wheat. 367; *U. S. L. Co.* v. *Harris,* 113 Fed. Rep. 32; *Bower* v. *L. Ins. Co.,* 86 Fed. Rep. 748; *Hosford* v. *Nichols,* 1 Paige, 220; *Cope* v. *Wheeler,* 41 N. Y. 303; *Williams* v. *Fitzhugh,* 37 N. Y. 444; *Buckingham* v. *Corning,* 26 Hun, 473; *Curtis* v. *Leavitt,* 15 N. Y. 9.)

GRAY, J. This is a proceeding for the disposition of certain surplus moneys arising upon the sale of lands in the city of New York, made pursuant to a decree in foreclosure of the plaintiff's mortgage. The property had been deeded to Kellogg, this respondent, by Dewey, this appellant, as collateral

security for the payment of the latter's notes.    The parties
were residents of Springfield, Massachusetts, and the loans of
moneys to Dewey were made upon his notes, which were dated
and delivered there and made payable at a bank in that city.
One of the notes thus given represented a bonus to Kellogg;
but all claim upon it was expressly waived.    When Dewey
deeded to Kellogg the New York real estate to secure the pay-
ment of his notes, a stipulation was made between them,
reciting the fact of the deed being security for the loans and
providing that the property should be re-conveyed to Dewey
upon the payment of the notes.    Creditors of Dewey brought
an action and procured it to be adjudged that, as between him
and Kellogg, the deed was a mortgage and that Dewey was
the legal owner of the property.    Upon the sale had in fore-
closure of the plaintiff's mortgage, subject to which the prop-
erty had been conveyed to Kellogg, the portion of the surplus
proceeds applicable upon Kellogg's interest as grantee, or
mortgagee, was claimed by him in satisfaction of Dewey's
unpaid notes; while Dewey, or his creditors, claimed them
upon the ground that Kellogg's mortgage was tainted with
usury and was void.    The courts below have sustained Kel-
logg's claim; holding, in effect, that, as it was not shown that
the agreement for the loan was usurious under the laws of
Massachusetts, the validity of the deed to secure the loan could
not be affected, because under the laws of New York the
principal transaction would have been avoided for usury.
No evidence was given as to the law of Massachusetts concern-
ing usury and it was not attempted to prove the contract to be
illegal in that state.    The validity of the agreement between
the parties, as determinable by the law of the place where
made, is conceded; but the appellant insists that, while the
notes for the moneys actually loaned may be, legally, indis-
putable, the deed by way of collateral security is, neverthe-
less, avoided under our usury law.    His argument is founded
upon the declaration of our Statute of Usury and upon the
authority of the early case of *Chapman* v. *Robertson*, (6 Paige,
627).    The provision of the Usury Law is, that "all bonds.

bills, notes, assurances, conveyances, all other contracts or securities whatsoever  *  *  *  whereupon or whereby there shall be reserved or taken, or secured,  *  *  *  any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is above prescribed, shall be void." (2 R. S. 772, sec. 5, as amended by L. 1837, ch. 430).

I do not think that this statute has any bearing upon the case of a transaction, or agreement, between the parties, valid in the foreign jurisdiction where made.   Under our law the deed by Dewey was perfectly valid on its face and conveyed a perfect title to Kellogg.   To establish its invalidity, whether as a deed, or as a mortgage, it was necessary for the former, in order to defend against its operation, to set up and to prove that the instrument was given in pursuance of an agreement, which was usurious and, therefore, vitiated the conveyance.   What we are asked to hold is that the law of the place, where the property happens to be, shall govern, rather than the law of the place where the loan was made, of which the conveyance was but an incident.   In my opinion, the meaning, or intent, of our usury statute is that the validity of the conveyance, or mortgage, is determined by the validity of the agreement of the parties and I think the law of the place of its making governs as to that.   As the defense of usury is a personal one, the conveyance was unassailable, until the defense was set up by the borrower and then the settlement of the issue was referable to the law of the place where the principal transaction was had.   The giving of security was but an incident of the agreement of the parties; for it was but a means of securing what was agreed to be done.   It did not affect the fulfillment of the agreement and if that is unassailable, how can the defense of usury in the agreement for the loan, or forbearance, of money be made out?   Manifestly, it cannot be.   The borrower could not show that the loan to him was so affected by usury that the repayment of the principal sum was unenforceable.   The case of *Chapman* v. *Robertson*, (*supra*), if we assume that it

lays down the rule that the *lex situs* governs, as the appellant contends, is not controlling upon us as an authority. A resident of the state of New York had applied to a resident of Great Britain for a loan upon his bond, secured by mortgage upon New York real estate. In proceedings to foreclose the mortgage, the defense was interposed that by the English law the loan was usurious. Chancellor WALWORTH held that the mortgage "being valid by the *lex situs*, which is, also, the domicile of the mortgagor, it is the duty of the Court to give full effect to the security." That the case was, probably, regarded as exceptional in its facts appears from the statement by the chancellor that "it was a contract partly made in this State and partly in England. And being actually made in reference to our laws and to the rate of interest allowed here, it must be governed by them in the construction and effect of the contract as to its validity." It differs from this case in the respects of the agreement having been, partly, made in England and, partly, here by residents of the respective countries and, also, of the money being payable generally. In this transaction the agreement was, wholly, made in Massachusetts by residents of that state and the money was to be repaid there. The differences may be unimportant and may not be determining. The decision, however, has not escaped criticism, in holding that the contract was to be governed, in the enforcement of the security for its performance, by the *lex situs* and it has been regarded as irreconcilable with other cases. (Story on Conflict of Laws, sec. 293c; *Cope* v. *McCraney*, 53 Barb. 350; *Dickinson* v. *Edwards*, 77 N. Y. 573, 586.)

The rule of law upon the facts of this case should be regarded as settled upon very precise authority. In *Cope* v. *Wheeler*, (41 N. Y. 303), the defendant had made a loan to the plaintiff upon the latter's bond, secured by a mortgage of lands in the state of Wisconsin. The mortgage was foreclosed and a surplus resulted from the sale, to recover which the action was brought. The defense was made that the loan was usurious under our law and that the bond and mortgage

were avoided. The question was stated as being whether "the bond and mortgage were a New York or a Wisconsin contract." It was held to be a New York contract, because, in the language of Judge JAMES, "at the time of negotiating and executing the $1,000 bond and mortgage, both parties resided in this state; the agreement for the loan was made here; the instruments were executed here; the money paid here and the excess of interest received here. Although the land covered by the mortgage was situate in the state of Wisconsin, yet neither bond or mortgage named any place of payment and hence the same were payable here, where the parties resided." Judge WOODRUFF, also, speaking in the same case, observed that "nothing is better settled than that the mere fact that collateral security for the payment of a debt, contracted here and payable here, is real property situated in another state does not change the place by the law of which the validity of the contract is to be tested." Further, and pertinently, he observes that "no doubt it is possible for parties in this State to make a contract of loan and advance with such reference to a foreign law, that the latter will govern its construction and legal effect. But that rule does not import, that the parties, by a mere mental operation, can import the law of another state into this for the purpose of altering the character of a loan made here, and to be here returned" etc. The general rule of law in this state is that a "purely personal contract is to be governed by the law of the place where by its terms it is to be performed," (per FOLGER, J., in *Dickinson* v. *Edwards*, 77 N. Y. at p. 587). The doctrine of *Curtis* v. *Leavitt*, (15 N. Y. 9), is to the same effect. It has been the general rule that "the validity, the nature, the interpretation and the obligations of contracts are to be governed by the law of the place in which they are to be performed," (*Pope* v. *Nickerson*, 3 Story, 465), and its application to the case at bar is demanded by every consideration of justice. The disposition of these surplus moneys is made upon equitable principles and it would be highly inequitable to hold, the parties having validly con-

tracted in their own jurisdiction, that the collateral security
for its performance should be defeated because of its situation
in a foreign jurisdiction, whose laws would have affected the
contract, if made there. But we find, further, authority in
point in the decision of the United States Supreme Court, in
*De Wolf* v. *Johnson*, (10 Wheaton, 367). The question
arose, in an action for the foreclosure of a mortgage, whether
the transaction of the parties, in which the mortgage originated,
was tainted with usury in the giving of a premium, or bonus,
for the loan. That required a consideration of the effect of an
earlier contract, which had been entered into in the state of
Rhode Island and which had been secured by a conveyance of
land in Kentucky. By the usury laws of the latter state the
contract was void; while the laws of the former state merely
imposed a penalty for the offense of taking more than six per
cent. interest. So far as it is material to our present discus-
sion, it was held, that " with regard to the locality of the con-
tract of 1815, we have no doubt, that it must be governed by
the law of Rhode Island. The proof is positive that it was
entered into there and there is nothing that can raise a ques-
tion but the circumstance of its making a part of the contract,
that it should be secured by conveyances of Kentucky land.
But the point is established, that the mere taking of foreign
security does not alter the locality of the contract with regard
to the legal interest. Taking foreign security does not neces-
sarily draw after it the consequence that the contract is to be
fulfilled where the security is taken. The legal fulfillment of
a contract of loan, on the part of the borrower, is repayment
of the money and the security given is but the means of
securing what he has contracted for; which, in the eye of the
law, is to pay where he borrows, unless another place of pay-
ment be expressly designated by the contract." The doctrine
of *De Wolf* v. *Johnson* was followed in *Coghlan* v. *So. Car.
R. R. Co.*, (142 U. S. 101, 110). The rule is similarly stated
upon this authority by Judge Story in his work on the Con-
flict of Laws, sec. 287. Judge Story, in section 293, further
states that where the due performance of a contract is secured

by mortgage upon property situated in any country where the interest is lower, it is not affected "for it is collateral to such contract and the interest being reserved, according to the place where the contract is made and to be executed, there does not seem to be any valid objection to giving collateral security elsewhere to enforce and secure the due performance of a legal contract." Chancellor Kent states the rule that the law of the place where the contract is made is to determine the rate of interest, although the loan is secured by a mortgage of lands in another state; unless there be circumstances to show that the parties had in view the laws of the latter place in regard to interest. (2 Kent's Com. 460.)

I think this case has been correctly decided and, as no other point demands our consideration, I advise the affirmance of the order appealed from, with costs.

EDWARD T. BARTLETT, HAIGHT, VANN, WERNER and CHASE JJ., concur; CULLEN, Ch. J., concurs in result.

Order affirmed.