R. Waldbou Heezberg,
Acting County Judge. In this action to foreclose a mortgage of lands located in the Town of Ancram, Columbia County and State of New York, the plaintiff (Pioneer) moves for a summary judgment pursuant to CPLR 3212. The defendants mortgagees (Catalanos) by a cross motion move to dismiss the complaint and for a cancellation of the note and-mortgage on the ground that these instruments are usurious, corrupt and void under the provisions of sections 5-501 and 5-511 of the General Obligations Law.
The basic facts are uncontroverted. On April 2, 1962 the Catalanos, who were at that time and still are residents of this State, borrowed the sum of $36,000 from Pioneer, a lending institution with its main office in Great Barrington in the Commonwealth of Massachusetts. The defendants agreed to repay this loan by payments of $500 per month with interest at 1% per month on the unpaid balance of the principal and interest. To secure this obligation the Catalanos executed on the same day at the plaintiff’s place of business in Massachusetts a note secured by a mortgage of lands in Columbia County, New York. The defendants further agreed that “ on any foreclosure of said mortgages, or other proceedings to collect this note, interest at the rate herein provided for, or the highest legal rate of interest allowed under the laws of the Commonwealth of Massachusetts, whichever is the lesser, shall be allowed ” (see note). The mortgage thereafter was duly recorded in the Columbia County Clerk’s office. Both parties agree that the negotiations for the loan, execution of the note and mortgage, delivery of the money and all payments on the obligation were made in Massachusetts. The Catalanos made payments on this indebtedness between April 2, 1962, and September 30, 1965, in the amount of $15,736.06, resulting in a reduction of the loan in the amount of $1,223.37 to the sum of $34,776.63. Since the Catalanos concede that this loan was not usurious under Massachusetts law, if this court finds that New York law is inapplicable, then Pioneer will be entitled to recover the sum of $34,776.63 with interest thereon at the rate of 1% per month from October 2, 1965.
Pioneer takes the position that the decision in Manhattan Life Ins. Co. v. Johnson (188 N. Y. 108 [1907]) correctly sets forth the laAv decisive in the instant matter. In that case the Court of Appeals held that á mortgage of lands in this State given to secure payment of a note executed and payable in Massachusetts, even though usurious in Nbav York, is valid and enforcible according to the laAAs of the State where the note was executed and payable.
*409 In Johnson the court said (p. Ill): “ I do not think that this statute [New York Usury Statute] has any bearing upon the case of a transaction, or agreement, between the parties, valid in the foreign jurisdiction where made. Under our law the deed by Dewey was perfectly valid on its face and conveyed a perfect title to Kellogg. To establish its invalidity, whether as a deed, or as a mortgage, it was necessary for the former, in order to defend against its operation, to set up and to prove that the instrument was given in pursuance of an agreement, which was usurious and, therefore, vitiated the conveyance. What we are asked to hold is that the law of the place, where the property happens to be, shall govern, rather than the law of the place where the loan was made, of which the conveyance was but an incident. In my opinion, the meaning, or intent, of our usury statute is that the validity of the conveyance, or mortgage, is determined by the validity of the agreement of the parties and I think the law of the place of its making governs as to that. As the defense of usury is a personal one, the conveyance was unassailable, until the defense was set up by the borrower and then the settlement of the issue was referable to the law of the place where the principal transaction was had. The giving of security was but an incident of the agreement of the parties; for it was but a means of securing what was agreed, to be done. It did not affect the fulfillment of the agreement and if that is unassailable, how can the defense of usury in the agreement for the loan, or forbearance, of money be made out? Manifestly it cannot be. The borrower could not show that the loan to him was so affected by usury that the repayment of the principal sum was unenf orcible. ” (Emphasis added.)
Later in Johnson (p. 115) the court quoted from Kent’s Commentaries as follows: “ Chancellor Kent states the rule that the law of the place where the contract is made is to determine the rate of interest, although the loan is secured by a mortgage of lands in another state; unless there be circumstances to show that the parties had in view the laws of the latter place in regard to interest. (2 Kent’s Com. 460.) ” (See Cope v. Wheeler, 41 N. Y. 303; Dickinson v. Edwards, 77 N. Y. 573, 586, 587.)
Defendants argue that the rule of law quoted from Manhattan Life Ins. Co. v. Johnson (supra) has been overruled by recent cases decided by the Court of Appeals in this State. Catalanos rely principally upon Auten v. Auten (308 N. Y. 155 [1954]). In Auten the court applied the “ center of gravity ” or “ grouping of contacts ’ ’ theory of the conflicts of laws to the facts, which emphasizes the law of the place which has the most significant contacts with the matter in dispute. (See Rubin v. Irving Trust *410 Co., 305 N. Y. 288, 305 [1953]; Haag v. Barnes, 9 N Y 2d 554, 560 [1961]; Babcock v. Jackson, 12 N Y 2d 473, 481 [1963] Downs v. American Mat. Liab, Ins. Co., 14 N Y 2d 266, 271 [1964]; Dym v. Gordon 16 N Y 2d 120 [1965].)
In Auten the husband, a resident of England, deserted his wife and children, also residents of England, went to Mexico, where he procured a divorce, and then took up residence in New York, The wife went to New York, where she entered into a separation agreement with her husband in which the latter agreed to pay a stated amount each month to a New York trustee for the account of the wife for the support of the wife and children. The wife returned to England where she continued to reside with her children. After the husband defaulted, the wife sued on the separation agreement in New York. In his answer the husband alleged that his wife had breached her agreement to lodge no complaint against him in any jurisdiction by reason of the alleged divorce, If New York law were applied to these facts, the wife could not recover; if English law, she could,
The Court of Appeals "determined that the law of England should apply since England had the most significant contacts with the matter in dispute: i.e,, the parties rvere married in England; the children were born there; husband and wife lived as a family in England for 14 years; the husband allegedly abandoned his wife in England; the husband was staying in New York on a temporary visa; and the wife after executing the separation agreement in New York returned to England, where she has since remained.
Applying in the instant case the most significant contacts with the matter in dispute, this court finds that the loan was negotiated in Massachusetts; the note and mortgage were executed there; the money was paid over to the debtors in that State; and all payments were made to Pioneer in Great Barrington. The only significant contact was the location of the mortgaged premises in this State, which as the court in Johnson (supra, p. 111) said “was but an incident of the agreement of the parties,” I am constrained to find that an application of the “ center of gravity ” or “ grouping of contacts ” theory of the conflicts of laws to the uncontroverted facts in this ease and a consideration of the agreement by Catalanos that on any foreclosure proceeding interest at the rate provided in the note, or the highest legal rate allowed under the laws of the Commonwealth of Massachusetts, whichever is lesser shall be allowed leads to the conclusion that the Commonwealth of Massachusetts is the place which has the most significant contacts with the matter in dispute,
*411 Defendant also urges that the law of New York should be applied since the terms of the loan are unconscionable, corrupt and against the public policy of this State. As recently as July, 1965 the Court of Appeals answered this argument in Dym v. Gordon (16 N Y 2d 120, 128, supra) where Burke, J., speaking for the majority of the court, said: “Public policy, per se, plays no part in a choice of law problem. (See Intercontinental Hotel Corp. v. Golden, 15 N Y 2d 9; Haag v. Barnes, 9 N Y 2d 554, 560.) Moreover, as stated in Loucks v. Standard Oil Co. [224 N. Y. 99, 111], ‘ The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal ’ ”.
The reasoning of the court in Intercontinental Hotels Corp. v. Golden (15 N Y 2d 9 [1964]) referred to in Dym (supra) points the way to deciding this contention in this case. There the defendant, a resident of this State, incurred gambling losses at a casino operated by plaintiff in Puerto Rico. After defendant reneged on his promise to pay, plaintiff brought an action to recover the gambling obligation in this State. The Court of Appeals held that the public policy of this State should not deny a party seeking to recover for gambling debts, obligations entered into in Puerto Rico and enforcible under Puerto Rican law, access to its courts. In its opinion the court said (p. 13) : “ Substantially all of the commentators agree that foreign-based rights should be enforced unless the judicial enforcement of such a contract would be the approval of a transaction which is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense [citing commentators].”
No case has been called to the attention of this court, nor has this court found one which classifies a transaction such as the one at issue before this court as ‘ ‘ inherently vicious, wicked or immoral, and shocking to the prevailing moral sense.” On the contrary it should be noted that the Legislature of this State has enacted laws which permit a rate of interest greater than “ six dollars upon one hundred dollars, for one year, and at that rate, for a greater or less sum, or for a longer or shorter time ” (General Business Law, § 370, now General Obligations Law, § 5-501, subd. 1). For example, a pawnbroker may not charge more than “ three per centum per month, or any fraction of a month, for the first six months, and two per centum per month for each succeeding month, upon any loan not exceeding the sum of one hundred dollars, or [more] than two per centum *412 per month for the six months and one per centum per month for each succeeding month on any loan exceeding the sum of one hundred dollars” (General Business Law, § 46). Another example can be found in subdivision 2 of section 293-a of the Banking Law which permits an industrial bank ‘ ‘ in purchasing or otherwise acquiring, any note or evidence of debt, whether negotiable or not, which has arisen out of the sale of personal property or the performance of services on credit and which is repayable in installments, from the payee or holder thereof, may do so for such price or other consideration and upon such terms and conditions as may be mutually agreeable.” Also under the Banking Law licensed lenders are permitted to charge 2%%, 2%, and %% per month on loans under $800 (Banking Law, § 352). Since a charge of an interest rate greater than “ six dollars upon one hundred dollars ” is permitted in this State under certain circumstances, the collection of interest at 1% per month by Pioneer is not in itself “ inherently vicious, wicked or immoral and shocking to the prevailing moral sense ” (see Intercontinental Hotels Corp. v. Golden, 15 N Y 2d 9, supra) or in contravention of the public policy of this State.
Motion of plaintiff for summary judgment granted. Cross motion of defendants denied. No costs.