[Civ. No. 1183. First Appellate District.—April 4, 1913.]

## A. H. LEVENTRITT, Appellant, v. ERNEST V. COWELL et al., Respondents.

BROKERS—COMMISSIONERS DEPENDENT UPON ACTS OF PRINCIPAL.—Although a broker is entitled to his commissions when he has produced a purchaser upon the terms stated in the contract and within the time limited, he may so contract as to make his compensation depend upon contingencies which his own efforts cannot control, even though such contingencies relate to acts of his principal.

ID.—PROCURING TENANT—DESTRUCTION OF BUILDING BEFORE COMPLETION.—Where a broker is employed to obtain a tenant for a building to be erected, and the contract provides for the payment of his commission "upon the signing of this lease," no commissions are earned until the signing of a valid lease, unless the failure to secure such signing results from the fault of the principal; and if a tenant is procured who merely signs a contract for a lease to be executed in the future, and the building is burned before completion and before the signing of the lease, the broker is not entitled to commissions.

CONTRACT—CONSTRUCTION—SUBJECT MATTER.—A contract must be construed with reference to the subject matter thereof.

ID.—CONTRACT FOR LEASE—DESTRUCTION OF BUILDING.—A contract for leasing a building to be constructed is terminated by the destruction of the building when nearly completed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. J. Van Nostrand, Judge.

The facts are stated in the opinion of the court.

Heller, Powers & Ehrman, for Appellant.

Olney, Pringle & Mannon, and Page, McCutchen, Knight & Olney, for Respondents.

HALL, J.—Plaintiff sued to recover the sum of $1,883.70 as broker's commissions for procuring a tenant for defendants. Judgment went for defendants, and plaintiff in due time appealed to this court from the judgment and from the order denying his motion for a new trial.

Defendants, through one of their number admitted to have sufficient authority therefor, signed and delivered to plaintiff a writing in the words as follows:

"San Francisco, April 14th, 1904.

"Mr. A. H. Leventritt, City.—Dear Sir: If you will secure for us a tenant satisfactory to us for the building we contemplate erecting on the land belonging to us situated on the N. E. corner of Clay and Sansome streets, being 57 feet 9 inches on Clay Street by 122 feet on Sansome Street, for a term not less than ten years, we will pay a commission upon the signing of this lease, of the rental which the tenant agrees to pay as follows: For the first year, two and one-half (2½) per cent, and for each subsequent year one (1) per cent per year thereof. Commission to be added to cost of bld."

Thereafter plaintiff procured a tenant or a prospective tenant for the contemplated building, in the firm of Zellerbach & Sons, who were financially responsible and acceptable as tenants to defendants.

Defendants and Zellerbach & Sons thereupon on June 13, 1904, executed a writing, whereby defendants agreed to erect an eight story and basement class "B" building upon the lot described, and to lease the same to Zellerbach & Sons at an annual rental of eight per cent upon the cost of the building and the value of the land. The building was to be commenced as soon as possible and within six months from the date of the agreement. This instrument provided that the parties of the first part (defendants) would lease the building to the parties of the second part (Zellerbach & Sons) upon a good and sufficient written lease. The agreement also contained many stipu-

lations as to the covenants to be contained in the lease, and among other things contained the following provisions: "Said lease of the premises to commence and run from the completion of said building, which shall be within a reasonable time after the commencement of the same, and acceptance of the same by the said parties of the first part.

"It is hereby thoroughly understood and agreed that the plans and specifications for the erection of said building shall be submitted to said parties of the second part and shall be approved and O.K.'d by them. . . . Said lease to be executed by all of the parties hereto when the plans and specifications of said building are approved."

It also contained a provision that the parties of the second part (the intended lessees) might enter into and upon said building before the completion thereof, but that such entry and occupancy should not be understood as an acceptance of the building by said parties of the second part, and that rental should not commence to run until actual completion and acceptance of the building.

Subsequently the amount of rental was fixed at a definite sum per month in a writing signed by defendants and approved by Zellerbach & Sons, which also stated that a draft of the lease would be at once submitted for execution.

No lease was ever signed by either of the parties; no plans or specifications for the erection of the building were ever submitted to the parties of the second part, and no such plans were ever approved or O. K.'d by them.

Defendants, however, commenced the erection of the contemplated building, and Zellerbach & Sons before its completion moved some of their machinery into the same. Before the building was finished it was totally destroyed without fault of any of the parties concerned, in the conflagration of April, 1906, and nothing has ever been done since said destruction toward rebuilding the same or proceeding under the agreement of June 13, 1904.

It is contended by appellant that notwithstanding that no lease was ever executed or signed, plaintiff had earned his commission when he procured Zellerbach & Sons to enter into the agreement for a lease above referred to. That the signing of a lease was not a condition precedent to the right of the broker to his commission. That the words in the contract of

employment, ''We will pay you a commission upon the signing of this lease'' of a stipulated per cent upon the rental reserved, were intended to fix the time at which the commission should be payable.

Respondent on the other hand, while conceding that as a general rule ''A broker is entitled to his commissions when he has produced a purchaser, upon the terms stated in the contract, within the time limited,'' (*Oullahan* v. *Baldwin,* 100 Cal. 648, [35 Pac. 310]), yet ''A broker may by special agreement with his principal so contract as to make his compensation depend upon a contingency which his own efforts cannot control, even though such contingency relate to acts of his principal.'' (4 Am. & Eng. Ency. of Law, 2d. ed., pp. 972, 973, sub. Brokers; 19 Cyc. 242 et seq.; *Hinds* v. *Henry,* 36 N. J. L. 328; *Hale* v. *Kumler,* 85 Fed. 161, 167, [29 C. C. A. 67]; *McPhail* v. *Buell,* 87 Cal. 115, [25 Pac. 266]; *Goin* v. *Hess,* 102 Iowa, 140, [71 N. W. 218, 219]; *Seymour* v. *St. Luke's Hospital,* 28 App. Div. 119, [50 N. Y. Supp. 989]; *Holbrook* v. *Investment Co.,* 30 Or. 259, [47 Pac. 920, 922].)

Undoubtedly the right of a broker to recover commission must be measured primarily by the terms of his employment.

Respondents contend that under the contract by which plaintiff was employed the payment of a commission was dependent upon the signing of a lease; that the signing of a lease was a condition precedent to the payment of a commission.

While the interpretation of the contract of employment is not entirely free from difficulty, we think the interpretation contended for by the respondent and adopted by the trial court is correct, at least to the extent that it must be held that no commissions were earned until the signing of a valid and binding lease, unless the failure to secure the signing of such lease resulted from the fault of defendants.

Every contract must be construed with reference to the subject matter of the contract. The matter of making a contract of lease usually involves the adjusting of many matters of difference between lessor and lessee. A lease of property valued at two hundred thousand dollars for a period of ten years would naturally and usually contain many provisions and covenants upon the part of lessor and lessee. Upon these various matters there must be a meeting of the minds of the

parties to the contract. Until the formal lease is reduced to writing and actually signed and executed by the parties it can never be certainly known that the minds of the lessor and lessee will in fact meet. Especially must this be so where, as in this instance, the subject of the contemplated lease was not yet in existence. It was doubtless in view of these considerations that defendant placed in the contract by which they employed plaintiff the words "We will pay you a commission upon the signing of this lease." The only promise to pay any commission is one to pay *"upon the signing of this lease."*

The lease was never signed. The instrument of date June 13, 1904, was not a lease nor intended to be a lease. It was a contract for a lease to be executed in the future, and in which the lessees had not fully agreed to the terms of the lease, for the contract provided that the plans and specifications for the building were yet to be approved and "O. K.'d" by the lessees. That they never did. They never accepted the building, for though they moved some machinery into the partially constructed building this was done under a provision of the contract that such act should not be such acceptance.

While the building was still in process of construction and before the intended lease had been signed it was totally destroyed in the conflagration following the earthquake of April, 1906, without any fault of defendants or of any one concerned in the matter.

This brings us to a consideration of the question, Was the failure to procure the signing of the intended lease the fault of defendants in any legal sense? We think not. Defendants in perfect good faith entered into an agreement with the intended lessees, under which they were to commence within six months the erection of a building to be leased to said lessees. This was the building and the only building concerned in the agreement had with the contemplated lessees. The building was to be commenced within six months, and completed within a reasonable time after the commencement of the same. Before it was destroyed, more than a year and a half had elapsed since the execution of the agreement under which it was being constructed. Before any lease had been signed the subject matter of the lease was destroyed. This brought the entire contract existing between defendants and Zellerbach & Sons within the rule that "Where, from the nature of the contract

it is evident that the parties contracted on the basis of the continued existence of the person or thing to which it relates, the subsequent perishing of the person or thing will excuse the performance.''      (9 Cyc. 631.)

Zellerbach & Sons had contracted, tentatively at least, to lease a building to be commenced within six months from June 13, 1904.      This building had been almost completed when it was destroyed.      Its destruction terminated the contract for its leasing.      (Civ. Code, sec. 1933.)

Zellerbach & Sons could not be compelled to enter into a lease for a similar building to be thereafter erected upon the same land, and they never offered to enter into such a lease. Upon the destruction of the subject matter of the contemplated lease both parties treated the contract for a lease as at an end, and the same was abandoned.      Defendants were in no fault that they did not secure the signing of the lease upon which they had agreed to pay to plaintiff a broker's commission, and the commission therefore was not earned.      (*McPhail* v. *Buell,* 87 Cal. 115, [25 Pac. 266].)

The judgment and order are affirmed.

Lennon, P. J., and Murphey, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 3, 1913.