HENRY A. VOSSLER, Defendant in Error, *vs.* GEORGE EARLE *et al.* Plaintiffs in Error.

*Opinion filed April 20, 1916—Rehearing denied June 8, 1916.*

CONTRACTS—*existence of contract resting in parol evidence is a question of fact.* Whether parol testimony establishes a contract of employment of the plaintiff to find a purchaser for the defendant's property is a question of fact in a suit a law to recover commissions, and the judgment of the Appellate Court finding that the contract is established is conclusive upon the Supreme Court if there is any evidence fairly tending to sustain such finding.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding.

GEORGE C. OTTO, and FRANK P. LEFFINGWELL, for plaintiffs in error.

KNAPP & CAMPBELL, (JOHN R. COCHRAN, and HARVEY J. CURTIS, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Defendant in error, Henry A. Vossler, (hereafter called plaintiff,) recovered a judgment in the municipal court of Chicago for $6000 against plaintiffs in error, George and William Earle, (hereafter called defendants,) for a commission claimed to be due and owing him on a sale made of defendants' property. The judgment was affirmed, on appeal, by the Appellate Court for the First District, and the case is brought to this court for review by a writ of *certiorari.*

Plaintiff's statement of claim in the municipal court alleged he was employed by defendants during the year 1911 to procure a purchaser for certain property of defendants located in Gary, Indiana; that he did procure a purchaser, W. R. Porter, and that defendants, on November 18, 1911, sold to said Porter 160 acres of land in Gary, Indiana, known as Earle's subdivisions 3, 4, 5 and 6, for the sum of $120,000; that a reasonable sum for plaintiff's services is $6000, which defendants agreed to pay but which they have not paid and now refuse to pay. The affidavit of defense filed by defendants contains a complete denial of all the allegations of the statement of claim except the allegation of the sale of the land to Porter.

Whether the judgments of the Appellate and trial courts are correct depends upon whether there was a contract of employment between plaintiff and defendants for the sale of the property involved, and whether the plaintiff brought about the sale of the property or procured a purchaser for the same. It is not disputed that the premises were sold to Porter, who was brought to defendants' office by plaintiff in April, 1911, but it is strongly urged by defendants that at the time plaintiff brought Porter to them and the contract of sale was entered into between them and Porter, there existed no agreement or understanding be-

tween plaintiff and defendants by which plaintiff was to receive any sum for procuring a purchaser for the property involved, and defendants claim plaintiff was acting as a mere volunteer. At the close of all the evidence defendants requested the court to hold that plaintiff could not recover and that the issues must be found for defendants. It will therefore be necessary to examine into the evidence to determine whether there was testimony fairly tending to establish plaintiff's claim.

Whether there was an agreement between plaintiff and defendants by which the latter were to pay the former for securing a purchaser for their property in Gary, Indiana, was the principal controverted question in the case. The Appellate Court said in its opinion "that from the evidence the court might properly find that there was a contract of employment." If the evidence fairly tended to sustain the plaintiff's contention that he was employed by defendants to sell their land, the existence of such contract or agreement was a question of fact conclusively settled by the Appellate Court and not subject to review by this court. (*Mayer* v. *Schneider*, 212 Ill. 286.) Plaintiff relied on oral testimony of a verbal agreement between the parties and correspondence offered in evidence to establish the employment.

The evidence showed plaintiff was a real estate broker residing in Gary, Indiana. Defendants lived in Chicago and were the owners of considerable real estate in Gary, referred to as subdivisions. On February 15, 1911, plaintiff called upon defendants at their office in Chicago and introduced himself to defendants and their office manager. They had a talk about the sale of defendants' property in Gary, and plaintiff said he had a prospective buyer for some of the property. Plaintiff testified defendants proposed to give him an option on the property for $500, $50 of which was to be paid in cash for a ten-day option and upon the payment of the remaining $450 the option would continue thirty days, or until March 16, and the defendants' manager said

273 — 24

plaintiff would be paid $6000 "overage" if subdivision 3 was sold for $50,000. At the same time defendants wrote a letter, which they mailed to or handed plaintiff, which referred to their conversation and gave the prices and terms for the sale of subdivisions 3, 4 and 6. The letter stated the prices named were net to defendants, and that in case plaintiff made a sale any overage he secured above the prices named was to be his profit. The letter also refers to the option given plaintiff in substantially the terms testified to by plaintiff. On February 17 plaintiff again called at defendants' office, accepted the option for the sale of subdivision 3 as proposed by defendants February 15, and paid the first $50. Defendants gave him a letter acknowledging the receipt of the same. The letter was also intended for use by plaintiff with prospective purchasers. It stated the price and terms upon which the sale of the subdivision could be made; that defendants would furnish abstract of title, cure any defects found, and so perfect the title that the Allman-Gary Title Guaranty Company or the Lake County Title and Trust Company would issue a guaranty policy. At the same time another letter was written to plaintiff by defendants which stated if plaintiff was able to sell subdivision 3 at $50,000 and pay to defendants $30,000 cash on or before March 16, 1911, they would pay plaintiff $8000 cash, "which amount represents your overage in perfecting the deal." March 9, 1911, plaintiff wrote defendants his prospective customer had failed to visit Gary, but stated when an opportunity presented itself to sell the property he would call and see them. Defendants answered this letter March 11, 1911, stating the option was now null and void, and further stating that if in the future the plaintiff should be interested in anything defendants had, they would be pleased to hear from him. On April 28, 1911, plaintiff, with William R. Porter, called upon defendants at Chicago. Plaintiff introduced Porter to defendants, and after a somewhat lengthy conference they entered into a contract

of sale of subdivisions 3, 4, 5 and 6 in Gary, Indiana, for $120,000. The terms of the agreement or contract were reduced to writing and signed by the parties, and Porter and plaintiff left defendants' office together. The terms of sale in the agreement were modified October 7, 1911, and again November 18, 1911, but the amount of the consideration was never changed and the deed to the property was made November 18, 1911. The day following that on which the agreement between defendants and Porter for the sale was made, plaintiff called defendants by telephone and asked what he was to receive for his services, and was told, nothing, because he was considered one of the purchasers. This he denied, and no claim is now made that he was one of the purchasers. Plaintiff testified he communicated with defendants by telephone about eight times and made perhaps ten visits to see them between May 1 and November 18, 1911, all with reference to the Porter deal. Several letters passed between the parties between May 1 and November 18, 1911, with reference to plaintiff representing defendants· in the sale of their Gary property on a commission basis. Plaintiff testified that in the latter part of June, 1911, defendant George Earle and defendants' agent, Barnes, met plaintiff in Gary, and that defendants told him they were greatly in need of money and if he could close up the Porter deal by the following Saturday they would pay him $1000 extra. Defendants denied they offered plaintiff $1000 extra, but testified they did offer to give him $500 if he could sell subdivision 3 in a week, or $1000 if he could get the Porters to take the other subdivisions. Defendants wrote plaintiff a letter, dated October 28, 1911, stating they were enclosing map showing various properties they would like for him to work upon and agreeing to allow plaintiff five per cent commission on sales. The letter states terms and prices on subdivisions 4, 5, 6, 7, 8, 9 and 10. The last paragraph of this letter reads: "Relative to the Porter matter, we will get you an answer, one way or the other, when

we know that the deal is going to be perfected. There is nothing new at this writing. We will later advise you whether we want to renew our former offer or not. The matter depends entirely upon whether the Porters fulfill their agreement with us." It will be noted this letter prices subdivisions 4, 5 and 6, a deed to which was later made to Porter. November 20, 1911, defendants wrote plaintiff stating subdivisions 3, 4, 5 and 6 had been sold to the Porters, not altogether on the former terms; that the deal was absolutely called off three or four weeks before, and that the "stalling" or delay of the Porters on the proposition had caused defendants an extra expense of $2000. The deposition of William R. Porter was read in evidence, in which he stated he had not met defendants until introduced to them by plaintiff; that plaintiff showed him the property once before he went to defendants and three or four times afterward; that he saw plaintiff with reference to the sale of the property a day or two before November 18, 1911, the date of the deed to the property, and that he saw plaintiff three or four times between October 28 and November 18, 1911, at Gary, Indiana.

We think there is sufficient evidence in the record to warrant and sustain the judgments of the Appellate and trial courts that there was an express agreement between plaintiff and defendants for the employment of plaintiff to sell defendants' property and that he was to receive compensation for his services if he effected a sale. We are impressed from the evidence that the judgments do substantial justice and no errors intervened that would require or justify their reversal.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*