[Civ. No. 1857.  First Appellate District.—April 11, 1918.]

## E. J. ALISON, Appellant, v. F. F. CHAPMAN, Respondent.

BROKER'S COMMISSION—WHEN EARNED.—Generally speaking, a broker authorized to sell real property has earned his commission when he has brought an acceptable purchaser to the vendor—one who is ready, able, and willing to buy the property upon the terms on which the agent is authorized to sell; or when a written contract acceptable to the seller has been entered into with a purchaser brought to the vendor by the agent.

ID.—COMMISSION PAYABLE UPON CONSUMMATION OF SALE—CONSTRUCTION OF CONTRACT.—Where a broker authorized to sell real property for a fixed price found a purchaser for a less price, and an agreement was entered into between them for the sale of the property at that price, which agreement was approved by the owner, but with the proviso that the broker's commission should be a flat one thousand dollars, payable "when the sale is consummated," the quoted words had reference to some future event, and not to the time of the signing of the contract, and where the deed never passed, the broker could not recover the commission.

ID.—SPECIFIC PERFORMANCE OF CONTRACT BY OWNER — RETENTION OF CONTROL BY BROKER—EFFECT OF.—Under a contract of sale providing that the broker should have the right to demand the delivery of a deed from the seller, thus retaining in his own control the power to secure the deed and demand performance of the purchaser, the broker cannot argue that it was the duty of the owner to enforce specific performance of the contract, and having failed to do so, he is liable for the commission.

ID.—FINANCIAL ABILITY OF PURCHASER—BURDEN OF PROOF.—In an action by a broker to recover a commission under a contract providing for payment on consummation of sale, the burden of proving the financial ability of the proposed purchaser is upon the plaintiff.

APPEAL from a judgment of the Superior Court of San Mateo County.  Geo. H. Buck, Judge.

The facts are stated in the opinion of the court.

E. F. Fitzpatrick, and A. Kincaid, for Appellant.

Kirkbride & Gordon, for Respondent.

BEASLY, J., *pro tem.*—Plaintiff brought this action upon an assigned claim of one Irving against defendant for a commission in a real estate transaction.

There are two questions in the case, one perhaps vital, and the other certainly so. The first is whether Adolph Uhl, at the time of the transaction in question, was able to pay twenty-one thousand five hundred dollars for the property involved therein; and the other question is whether the words, "when the sale is consummated," as used in the contract of sale, are to be construed as meaning when the deed was passed and the deal closed.

The controversy arose in this way: The defendant in writing authorized Irving to sell certain real property for him at a price of twenty-two thousand dollars, and agreed to pay a commission of five per cent if the property should be sold within the time mentioned in the contract. Irving found a purchaser in Adolph Uhl at twenty-one thousand five hundred dollars, and entered into an agreement of sale and purchase with him at that price, taking a five hundred dollar deposit on the property. The defendant Chapman accepted this five hundred dollars payment and agreed to the sale of the property under this contract, but with the proviso that Irving's commission should be a flat one thousand dollars, to be paid, as stated in the contract, "when the sale is consummated." The trial court found that Uhl was unable to pay the purchase price or carry out the contract. The deal was never closed.

It may be conceded that, generally speaking, a broker has earned his commission when he has brought an acceptable purchaser to the vendor—one who is ready, able, and willing to buy the property upon the terms on which the agent is authorized to sell; or when a written contract acceptable to the seller has been entered into with a purchaser brought to the vendor by the agent. But there are special features in this case which indicate a different intention of the parties. This was not strictly a case of a broker employed to go out and find a purchaser on certain terms. The broker had found the purchaser and brought him to the vendor. A contract was thereupon entered into by which the purchaser became bound to the vendor to buy the property upon terms satisfactory to the vendor. The question of the ability of the vendee to carry out his contract to purchase the property may have been the very reason why the vendor agreed to this contract only upon condition that the commission should be paid when the deal was finally closed. The words, "when

the sale is consummated,'' could hardly have referred to the time when the written contract of sale was made, because that was already completed simultaneously with this agreement as to the time of payment of the commission. Those words must have referred to some future event and not to the time of signing the contract of sale.

It is argued that it was the duty of Chapman to enforce the specific performance of this contract; and that if he failed to take steps to do this, he must be held liable for this commission; in other words, that it was his duty to secure the closing of the deal. But it cannot be so held for two reasons: First, Irving, in the contract of sale, provided that he should have the right to demand the delivery of a deed from Chapman, thus retaining in his own control the power to secure this deed and demand performance of Uhl. No other reason has been suggested for this provision of the contract. Again, the court found (and although the evidence sustaining the finding is meager we think it sufficient) that Uhl was not able to perform his contract. The evidence upon this point is conflicting. A single question asked of Uhl would have settled the point absolutely, but it was not asked. Such lapses give rise to many of the appeals that come to this court. Mr. Uhl testified that he could have carried out this contract, but he also testified that it would have been inconvenient for him to do so, and that to do so he would have been compelled to borrow money at high rates of interest upon certain securities, which seem to have been of questionable value. There is no real evidence as to Uhl's financial ability or property—nothing but hearsay. Uhl was on the witness-stand, and while questioned generally as to his ability to carry out this contract, was not questioned at all as to what property he owned or its value. The burden of proving his financial ability rested upon the plaintiff in this case; and it may well be that from the testimony in the case the court concluded that he was not financially able to pay for this property. Neither Chapman nor Uhl made any attempt to carry out this contract until the time for doing so had lapsed. Uhl thereupon endeavored to get Chapman to accept certain bonds in part payment of the contract price, and this Chapman refused to do; and Uhl thereupon said that his errand was finished and he would go home. Neither did Irving demand a deed from Chapman nor en-

deavor in any way to see the deal through. Under the circumstances we think the judgment must be affirmed. It is so ordered.

Kerrigan, J., and Zook, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 10, 1918.