[Civ. No. 6980.   Second Appellate District, Division Two.—October 28, 1931.]

DAGMAR WESTERGARD, as Executrix, etc., Respondent, v. FRANK G. BAKER et al., Defendants; H. C. TUCKER, Appellant.

Davis & Thorne for Appellant.

Aromand H. Blum and Gail Selig for Respondent.

FRICKE, J., *pro tem.*—This is an appeal from a judgment for plaintiff in an action for a broker's commission under a contract reading as follows:

"Los Angeles, California, September 7th, 1926.

"Commission Agreement.

"Whereas P. Westergard, Realty Broker is negotiating a tenant for a Ninety-nine year Lease on Lots 8–9 and 10, Spence Tract, Wicks addition, owned by H. C. Tucker, F. G. Baker and G. W. Baker, it is hereby agreed that Mr. Westergard will accept $1,800 as Commission, if deal is consummated, Commission to be paid as follows: $450.00 per Month starting when said transaction is completed and Papers come out of escrow.

"Signed FRANK G. BAKER.

"Signed   H. C. TUCKER.

"Agreed to

"P. WESTERGARD."

The defendants and one G. W. Baker were the owners of a certain parcel of real property in the city of Los Angeles. Whittier Boulevard Pools, Inc., were desirous of securing

a location for the construction of a swimming pool, and consulted P. Westergard, the plaintiff, a real estate broker, who in turn got in touch with defendants, and a lease was entered into between them and Whittier Boulevard Pools, Inc. The trial court found that the lease was executed "on or about" September 8, 1926. The lessee paid six months' rent in advance and started excavating, but before its completion, abandoned the project. Subsequent to the taking of this appeal the executrix of the plaintiff was substituted as plaintiff and respondent herein.

■ Appellant's basic contention is that the finding of the court that the lease was executed after the commission agreement is not supported by the evidence. Both appellant and respondent assert that the date of the execution of the lease and whether it was before or after the execution of the commission agreement are of vital importance and largely determinative as to the rule of law applicable to the case. Appellant's counsel asserts that there is "not one iota" of evidence to show that the lease was signed subsequent to the agreement, while respondent declares that not only did the proof show that the lease was executed after the agreement, but also that the case was tried upon that theory. The answer to the complaint refers to the agreement as one for a commission "to be paid upon the consummation of a deal for the leasing of said lots . . . upon the condition that the plaintiff would obtain a tenant who would sign a lease for said premises", a concession that the lease was signed after the commission agreement, and at the outset of the trial we find counsel for plaintiff and respondent offering to stipulate that the lease was executed on the same date as the agreement, an offer which, however, was not accepted by appellant. Though the lease was in court and in the hands of the trial judge, who directly inquired whether it was the desire of counsel to put it in evidence, this important document was neither received nor offered as an exhibit. There is in the record testimony that the lease was executed "on or about" September 7, 1926, and there is testimony that it was executed "on or about" September 8, 1926; there is testimony from which the inference may be drawn that the agreement came first and other testimony that the lease was the first of the documents to be executed, but we have not been

referred to, nor have we found any testimony as to, the exact date of the execution of the lease.

The finding of the trial court that the lease was executed on September 8, 1926, and after the execution of the commission agreement, is supported by the evidence. It may be added that, under the theory of defense here advanced by appellant, the burden of establishing that the lease was executed before the commission agreement was upon appellant.

The other points raised by appellant depend upon his theory that the evidence showed that the execution of the lease preceded the commission agreement, and that, under the terms of the latter, no commission would become due and payable until the transaction between the lessee and lessors, involving the financing of proposed construction, were completed. With the supported findings of fact of the trial court against this theory of the facts, the rules of law applicable to such a theory are not applicable here.

(2) The commission agreement was drafted by appellant's co-defendant Baker, who appears to have acted as the spokesman for defendants, and we may therefore assume that it expresses the intent and knowledge of appellant at the time of its execution. It recites that P. Westergard, a realty broker, "is negotiating a tenant" for the lease of the lots in question. It stipulates for an agreed commission "if deal is consummated", to be paid "when said transaction is completed and papers come out of escrow". The words *"deal"* and *"said* (italics ours) transaction" can refer only to the only "deal" and "transaction" mentioned in the agreement, to wit: The "negotiating" of a tenant for a lease of the lots. Excluding the last five words in the body of the agreement, it clearly provides that the first payment of the commission became due when the lease was negotiated and executed. This leaves for consideration the five words "and Papers come out of escrow". No other subject being mentioned in the agreement, the reference can only be to papers and an escrow concerned in the "deal" and "said transaction", in other words, to the consummation of the lease.

(3) As the lease was executed by defendants, the lessors, without the formality of a preceding escrow, the condition of the agreement relating to papers coming out of escrow was thereby waived by the said lessors and the time

for the payment of the commission was no longer contingent upon such escrow.

■ Appellant contends that the term "escrow" refers to an escrow entered into between the lessor and lessees involving the financing of the swimming pool project. There is nothing to show that the real estate broker's commissions here involved had any connection with any such escrow or that he had any duties to perform in connection therewith; in fact, there is direct testimony that he had nothing to do with the financing of the proposed structure.

The judgment is affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 25, 1931, and the following opinion then rendered thereon:

FRICKE, J., *pro tem.*—The petitioner suggests that there may be a misapprehension as to the fact as to whether the lease or the agreement for commission was executed first. We again call attention to the conflict in the evidence on this point, the failure of appellant's counsel to adopt the suggestion of the court to introduce the lease itself in evidence, and the rule that a finding of fact supported by the evidence at the trial is conclusive on appeal.

Petitioner cites *Alison* v. *Chapman,* 36 Cal. App. 759 [173 Pac. 389], in support of his contention that the plaintiff would not be entitled to a commission until the lease was signed and the property financed to carry out the project of Whittier Pools, Inc. In the cited case the broker had secured a purchaser who offered a price less by $500 than that asked by the vendor, and *after* entering into an agreement of sale and the taking of a $500 deposit, the broker took up the matter with the vendor who accepted the deal as thus far made and agreed to pay the broker a flat commission "when the sale is consummated". The purchaser failed to further perform his part of the contract of sale. It was there properly held that the words "when the sale is consummated" related to and "must have meant some future event and not to the time of signing the contract of sale". In the cited case the agreement of sale preceded the commission agreement while in

the case at bar the lease (corresponding to the sales agreement in the cited case) was not delivered or executed until after the commission agreement. This material difference in the facts renders the cited case inapplicable.

Petitioner's contention that the word "procured" in the court's finding, "that prior to the signing of said agreement as aforesaid plaintiff procured and induced the Whittier Boulevard Pools, Inc., a corporation, to lease the property" means that the lease was executed prior to the commission agreement, is untenable. The court in the finding preceding the one from which counsel quotes found that the commission agreement was entered into and executed "on the 7th day of September, 1926", and immediately following the portion of the finding relied upon and quoted by counsel it appears that the trial court found that "on or about September 8, 1926, . . . (the parties) did enter into a lease contract". In the face of this express finding that the lease was executed on the day following that on which the agreement was executed it is clear that the word "procured" was not used in the sense contended for by petitioner. It is elementary that findings must be considered as a whole and that the separate portions thereof must be construed in the light of the context.

Petitioner has chosen to state that the second point of the opinion is based upon the fact that the commission agreement was drafted by appellant's co-defendant Baker and urges that the evidence "does not show that Mr. Baker dictated it". A reading of the opinion will disclose that there is no statement therein to the effect that Mr. Baker "dictated" the agreement. The record does show, however, that the plaintiff testified that Mr. Baker "had a little statement written on a piece of paper which he said if I would draw it up on a typewriter he would sign it" and the witness followed this by testimony that the agreement introduced in evidence, signed by the parties, was a correct copy of the slip of paper that was given him by Mr. Baker. Petitioner must have been familiar with this testimony since the petition contains a correct reference thereto in the reporter's transcript.

Petitioner further chooses to distort the language of the opinion, "As the lease was executed by defendants, the lessors without the formality of a *preceding* escrow" (italics

ours), by urging that there was an escrow and to support this contention refers to evidence of an alleged escrow relative to the lease with the Bank of Commerce *after* the lease was executed and delivered. Had counsel read the testimony of the banker they have discovered that he testified as follows: ''Q. Was there ever any escrow created in your bank relative to that lease? A. No sir.'' There is evidence, supported by a stipulation at the trial, that the lease and a check for $2,700 were deposited with the banker ''as trustee'' by the lessee, Whittier Pools, Inc., to finance and negotiate a loan on the property to provide funds for the project of the lessee and that later the commission agreement and a mortgage and some notes were handed to the banker. The facts as to the nature of the deposit with the bank cannot be the subject of dispute for the record shows that the parties stipulated at the trial that the deposit of the lease with the banker was ''as trustee . . . to finance this property'' and it also appears that this was subsequent to the execution and delivery of the lease since the depositor of the lease was Whittier Pools, Inc., the lessee. It would seem that the deposit was not an escrow but a trust to finance the project, not involving in any way the delivery of the lease. But, whether escrow or trust, it was subsequent to the delivery and execution of the lease and, under the law of the case, subsequent to the time when the commission became due. The evidence offered to prove such trust or escrow was, therefore, immaterial and its exclusion was not erroneous.

The petition is denied.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 24, 1931.