[Civ. No. 12150. Second Appellate District, Division Two.—May 10, 1939.]

R. M. McGILL, Appellant, v. VICTOR FLEMING, Respondent.

Shattuck, Davis & Story for Appellant.

Victor Ford Collins for Respondent.

WOOD, J.—Plaintiff commenced this action to recover a sum alleged to be due for services rendered by himself and M. E. McCreery as real estate brokers. He prosecutes this appeal from a judgment in favor of defendant.

Defendant, owner of two vacant pieces of real estate in Beverly Hills and in Los Angeles, employed plaintiff's firm

to secure leases on the properties from the Great Atlantic and Pacific Tea Company, hereinafter referred to as the company. On May 18, 1936, defendant signed an agreement in the following words:

"McGill-McCreery
  "9527 Santa Monica Blvd.
      "Beverly Hills, California.

"Gentlemen: With reference to the Atlantic & Pacific Tea Co. leases on my properties located at the southeast corner of Wilshire Boulevard & Reeves Drive in Beverly Hills and the southeast corner of Los Feliz Boulevard & Brunswick in Los Angeles. I agree to pay you a commission for consummating these leases as follows: Wilshire & Reeves—sixteen hundred fifty ($1650.00) Los Feliz Brunswick—eight hundred fifty ($850.00). It being understood and agreed that the total commission is to be paid within ninety days after each respective store opens for business, payable one third each month until paid.

                      "Very truly yours,
                          "VICTOR FLEMING."

This agreement, which was approved in writing by the brokers, is the basis of plaintiff's action.

At the time the agreement relied upon by plaintiff was signed by defendant there were already in existence two forms of leases, both dated May 14, 1936, in one of which it was set forth that defendant leases unto the company "for the purpose of a general merchandise business, a building with dimensions of 70 ft. by 100 ft. with basement 70 ft. by 25 ft. to be erected on lot 1844 and the easterly 20 ft. of lot 1843, of tract 6380, in the City of Beverly Hills, County of Los Angeles, in substantial compliance with a floor plan and specifications to be furnished by lessee and approved in writing by the lessor". The form of lease also contained this provision: "It is agreed by the lessor and lessee that in the event that the plans and specifications of the demised premises are not mutually approved in writing within thirty (30) days from the date of this lease, then either party can cancel same without obligation." The other form of lease contained similar provisions except that the lot involved is in the city of Los Angeles. Defendant signed the documents just referred to on May 18, 1936. Both documents bear the date of May 14, 1936, and were signed by the company, but the exact date on which they were signed

by the company's representative is not clear from the evidence.

Defendant employed a firm of architects, Morgan, Walls & Clements, and thereafter the warehouse superintendent for the company furnished certain specifications to Mr. Clements but did not submit plans. No plans or specifications were ever submitted directly to defendant and no plans or specifications were ever approved in writing by a representative of the company or by defendant. No further action was taken by any of the parties until January 12, 1937, at which time the company wrote a letter to defendant in which demand was made that defendant proceed with the erection of the buildings and in which it was stated that if the company did not hear from defendant within three days it would be concluded that defendant had abandoned the leases. To this letter defendant's attorney sent a reply pointing out that no one from the company had ever contacted defendant and stating further: "As a matter of fact, my understanding is that for many months, everyone connected with this transaction had felt that you had completely abandoned any further interest in the projects. It was a great surprise to Mr. Fleming to receive your letter of January 12th. May I call your attention to this clause that appeared in both instruments, to-wit: 'It is agreed by the Lessor and the Lessee that in the event the plans and specifications of the demised premises are not *mutually* approved in *writing* within thirty (30) days from the date of this lease then either party can cancel same without obligation.' You will recall that Mr. Fleming insisted upon this clause being inserted in the leases, until he could determine from the actual inspection of the plans and specifications the cost and character of building. The leases are very clear and were accepted by your company with this provision. The plans and specifications were not approved by either party within the thirty days period."

The trial court found: "That at the time the plaintiff and M. E. McCreery and the defendant herein executed said letter of May 18, 1936, the said plaintiff and plaintiff's assignor well knew that said agreement in relation to lease contained the language above set forth, and knew and agreed that unless the plans and specifications were mutually agreed to that the building referred to in said agreement would not be built and the stores therein could not open." The court further

found that the leases were not consummated and that the failure to construct the building was not "the result of any wrongful or negligent acts of the defendant . . . That said building was not built because the defendant and the Great Atlantic and Pacific Tea Company did not mutually agree upon the plans and specifications . . . That it was not contemplated or agreed to between the defendant and the plaintiff and M. E. McCreery that the defendant be obligated to pay any commission to the plaintiff except and unless said plans and specifications be mutually agreed to and the building erected accordingly and the stores opened therein. That the payment of any commission to the plaintiff or plaintiff's assignor was conditioned and was made conditioned upon the opening of said store for business, and the court finds it did not open for business . . . That no lease, or any agreement for lease was entered into or accepted by the defendant, except the agreement for lease hereinafter referred to . . . That said contracts did not constitute leases and were not intended to constitute leases except and until the parties thereto mutually agreed to plans and specifications for the erection of buildings on the respective properties."

The trial court properly concluded that the parties contemplated the payment of the brokers' commissions only upon the effective consummation of the leases. We are not unmindful of the general rule that a broker earns his commission when he has secured an acceptable lessee for the lessor, one who is ready, able and willing to lease the property upon the terms on which the broker is authorized to negotiate the lease. The present case, however, is not the ordinary one in which a broker is employed to secure a lessee in the open market. In this case the prospective lessee was named in the form of lease which had been prepared and also in the agreement sued upon. In this agreement the lessor became bound to pay the commission "for consummating" the transaction. The right of the broker to recover commissions must of course depend upon the terms of his employment. The word "consummate" means to bring to completion. (*Connor* v. *Riggins*, 21 Cal. App. 756 [132 Pac. 849].) In order to consummate the transaction it was necessary that a binding and valid lease be secured, one which bound the lessee to comply with definite terms agreed upon by the parties. It is not reasonable to construe the words "for consummating the

lease'' as referring to the signing of the lease forms which had already been drawn up, for those documents were not binding upon either defendant or the company.

It will be noted that in the so-called leases the lessor purports to lease *a building,* one which was not then in existence. The floor plan and specifications were to be mutually agreed upon between the parties and approved in writing within thirty days, otherwise either party could be relieved from all obligations. The plans and specifications were naturally of great importance to defendant, since they might require a greater or lesser expenditure of funds in the erection of the building. Obviously they were also of importance to the company. Plaintiff's contention that he became entitled to his commissions upon the signing of the forms of leases does violence to a reasonable construction of the language used in the agreement, particularly in view of the circumstances surrounding the transaction. If the commission became due upon the signing of the instruments in question there would have been no need for employing the language ''for consummating'' the leases and for requiring that the payment of the commissions be made after the erection of the buildings.

In *Leventritt* v. *Cowell,* 21 Cal. App. 597 [132 Pac. 627], the factual situation was very similar to that of the case un der review. The litigation there involved ''a contract for a lease to be executed in the future, and in which the lessees had not fully agreed to the terms of the lease, for the contract provided that the plans and specifications for the buildings were yet to be approved and 'O.K'd' by the lessees''. It was held that the broker could not recover. (See, also, *Ball* v. *California Conserving Co.,* 189 Cal. 326 [207 Pac. 1011]; *Allison* v. *Chapman,* 36 Cal. App. 759, 760 [173 Pac. 389]; *Peak* v. *Jurgens,* 5 Cal. App. (2d) 573, 576 [43 Pac. (2d) 569].)

We agree with the conclusions reached by the trial court that the leases never became effective because of the failure of the parties to agree upon the plans and specifications, that the brokers did not consummate the leases and that they are not entitled to recover commissions.

The judgment is affirmed.

Crail, P. J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1939.