[Civ. No. 16632.  Second Dist., Div. Two.  Feb. 3, 1949.]

DE WITT M. PETERSON, Appellant, v. MONTGOMERY
HOLDING COMPANY (a Corporation), Respondent.

Chase, Rotchford, Downen & Chase for Appellant.

Sims & Wallbert for Respondent.

WILSON, J. — Plaintiff, a licensed real estate broker, brought this action to recover commissions alleged to have been earned in procuring the Owl Drug Company as tenant for property in the city of Los Angeles owned by defendant upon which it proposed to erect a building. The trial proceeded until defendant's written offer to pay the commission was received in evidence and the record showed (1) that defendant had never entered into a binding contract to lease the property to Owl Drug Company, (2) that defendant and the drug company had never agreed as to the terms of the lease, and (3) that defendant had never entered into a contract for the construction of the proposed building. The

court then sustained defendant's objection to the introduction of further evidence and entered a judgment of nonsuit.

Plaintiff has appealed from the judgment and has attempted to appeal from the nonappealable order denying his motion for a new trial.

Plaintiff testified that he was authorized by the president of defendant to obtain the Owl Drug Company as a lessee at a rental of $1,200 a month minimum guarantee and a maximum equal to 3 per cent on tobacco sales and 5 per cent on general merchandise. The court sustained an objection to a question propounded to plaintiff concerning a conversation between him and the officers of defendant corporation in December, 1944, relative to his commission on the ground that the contract for commission had been reduced to writing. There was no error in the court's ruling. The complaint alleged that the original oral contract made in November, 1944, should be reduced to writing and the writing was in evidence. Oral testimony as to the amount of the commission or as to any other phase of the agreement was therefore inadmissible. The conversations had between plaintiff and the officers of defendant after he was orally authorized to procure the tenant and before the date of the written contract are immaterial since all previous negotiations were merged into the written instrument.

The commission agreement between plaintiff and defendant is dated May 15, 1945. After reciting that defendant is the owner of the property involved and plaintiff is a licensed real estate broker the agreement reads as follows:

''Whereas, it is the intention of the parties hereto that this agreement shall cover the rights of the broker to any commission as well as the obligations of the owner to pay such commission and the terms and conditions under which said commission shall accrue.

''Now, Therefore, in consideration of the premises and the mutual covenants and agreements herein contained, the parties hereto do agree by and with each as follows, to wit:

''1. The rights of the broker to any commission as well as the obligation of the owner to pay said commission shall arise out of and be governed by the terms and provisions of this agreement exclusively.

''2. In the event that the broker is successful in obtaining as tenant for the owner's property referred to herein, the Owl Drug Company, the owner agrees to pay to the broker a commission of Three Per Cent (3%) of the minimum rental

for the first Five (5) years of the term of the lease obtained by the Broker, and a further commission of Two Per Cent (2%) of the minimum rental for the balance of the term of said lease. No commission shall be paid to the Broker on excess rentals or rentals over the minimum guaranteed rental. This agreement expires November 15, 1945.

"3. Said commission shall be payable upon the following additional conditions:—

"2. The commission shall be payable when the owner has executed a contract in writing for the construction of the building upon the Owner's property.

"4. This agreement shall not be changed, altered or amended in any manner, whether by operation of law, or otherwise, except by a written amendment executed by both the Owner and the Broker . . ."

The terms of this agreement demonstrate the correctness of the two rulings of the court concerning which plaintiff complains: (1) That oral evidence concerning conversations between plaintiff and defendant's officers was inadmissible since the written contract provides that plaintiff's right to a commission and defendant's obligation to pay the same arise out of and are governed exclusively by the provisions of the agreement; (2) that plaintiff is not entitled to a commission by reason of the stipulation that no contract was ever entered into by defendant for the construction of a building on its property, such contract having been declared in paragraph 3 of the commission agreement to be a condition upon which payment of commission depended.

Defendant agreed to pay the commission upon the occurrence of two expressly named contingencies: (1) that plaintiff should obtain the Owl Drug Company as a tenant for defendant's property; (2) that a contract for the construction of the building should be executed by defendant.

It is twice recited in the agreement that the same shall cover the rights of plaintiff to receive and the obligation of defendant to pay a commission. In *Edgecomb* v. *Callahan*, 132 Cal. App. 248 [22 P.2d 521], in a letter to the broker by the owner, the terms of the proposed lease were set forth and the owner agreed to pay a commission "when the lease is signed." The broker brought the owner and the proposed lessee together but no lease was ever executed. When this fact was shown by the evidence the trial court ruled, as did the court in the instant case, that no further evidence should be admitted. The court held (p. 255) that an owner and a broker may enter

into a binding agreement that no commission shall be considered as earned until the happening of a specified event, and since the agreement expressly provided that the commission should be paid when the lease was signed and no lease was executed the commission was not earned and the court correctly terminated the trial at that point. In *Leventritt* v. *Cowell*, 21 Cal.App. 597 [132 P. 627], the contract provided for the payment of a commission to the broker "upon the signing of this lease." The court held (p. 600) that the right of a broker to recover commission must be measured primarily by the terms of his employment; that a broker may, by special agreement with his principal, make his compensation depend upon a contingency which his efforts cannot control, and that the plaintiff was not entitled to his commissions until a valid, binding lease had been signed, unless the failure to secure the signing resulted from the fault of the defendants. The latter clause has no application to the instant case since defendant's failure to execute a contract for the construction of the building was not due to its fault or bad faith but resulted from the refusal of the drug company to agree to the payment of the rental demanded by defendant. The latter was under no obligation to construct a building until the terms of the lease had been decided upon by the owner and lessee. In *McGill* v. *Fleming*, 32 Cal.App.2d 601 [90 P.2d 341], it was agreed that the broker's commission for procuring leases should be paid within 90 days "after each respective store opens for business." The trial court was sustained in its ruling that the agreement contemplated the payment of commissions only upon the effective consummation of the leases, and since the leases were not signed the broker was not entitled to his commission. ■ When a condition precedent is adopted by contracting parties in their agreement, the court will exact a substantial if not a strict observance of the provisions of the agreement before ordering a judgment thereon. (*McKenzie* v. *Scottish etc. Co.*, 112 Cal. 548, 556 [44 P. 922].)

Although for several months prior to the execution of the written contract plaintiff had been negotiating with the Owl Drug Company and defendant under his oral agreement and had performed services in an attempt to obtain the drug company as a tenant of defendant's property, he was not entitled to compensation for his services by reason of (1) the provision in the oral agreement, according to the allegations of the complaint, that the agreement would, at a later time, be

reduced to writing, and (2) the fact that when the contract was reduced to writing it precluded plaintiff from collecting compensation unless and until defendant had executed a written contract for the construction of a building on the property to be leased.

Defendant and the proposed lessee never reached an agreement as to the terms of the lease. Defendant insisted upon a lease providing for the payment of 3 per cent of the amount of tobacco sales and 5 per cent of sales of other merchandise, but the drug company never agreed to pay that amount. Its offer, according to a letter written by defendant to plaintiff attached to the complaint, was to pay only 4.1 per cent of sales as rental. By reason of the failure of the parties to reach an agreement the building was not constructed and negotiations between the owner and the drug company were terminated.

The agreement is unlike the contract construed in *Wallace* v. *Carlin,* 92 Cal.App. 31 [267 P. 596], upon which plaintiff relies. In that case the broker was employed to sell apartments in a building to be thereafter constructed. The contract had no such provision as that found in the instrument involved in this action. The latter provides that the commission shall be payable ''upon the following additional conditions,'' to wit, when the contract for the construction of the Owl Drug building has been executed. In the Wallace case the broker was entitled to his commission upon the sale of each apartment and execution of a contract for the construction of the apartment building was not made a condition precedent to the broker's right to his commission. In each of the Edgecomb, Leventritt and McGill cases a clause similar to that in the contract found in the instant case was held to be a condition upon which the commission would be payable, and not merely a provision fixing the time when the commission should be paid.

A witness, who in 1944 and 1945 was vice-president of the Owl Drug Company in charge of its Southern California base, testified that negotiations with defendant extended over a period of about two years for the lease of defendant's property, and that the board of directors of the company took action approving the site as a proposed location for one of its stores, but that he did not recall whether the board set aside any funds to be expended for the purpose of undertaking leasehold improvements on the property. He did not testify that the parties reached agreement as to the terms

of the lease, and there is no evidence that they did so. In fact the evidence is to the contrary.

Plaintiff made a general offer to prove that the Owl Drug Company was ready, able and willing to sign a lease but did not offer to prove that the terms of the proposed lease were those contained either in the written agreement for the payment of commission to plaintiff or in the previous oral agreement to which reference has been made. The rejection by the court of a general offer of proof without producing the witness or stating his name or the evidence whereby the issue of fact is proposed to be proved is not a ground for reversal on appeal. (*Douillard* v. *Woodd*, 20 Cal.2d 665, 670 [128 P.2d 6]; *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 163 [195 P.2d 416]; *Western Pipe & S. Co.* v. *Tuolumne etc. Corp.*, 63 Cal.App.2d 21, 27-8 [146 P.2d 61].)

Plaintiff contends that defendant's letter of July 9, 1945, in which it is stated that the offer of the Owl Drug Company to pay 4.1 per cent as rental was not acceptable, constituted an anticipatory breach of the agreement which entitles him to recover. The negotiations of the parties, plaintiff, defendant and Owl Drug Company, never resulted in an agreement, since defendant was not willing to accept the percentage offer made by the drug company. The letter was not a breach of the contract. It merely notified plaintiff that defendant was unwilling to accept the offer of the drug company and that it insisted upon the terms originally specified.

Plaintiff further contends that he is entitled to his commission by reason of the fact that defendant arbitrarily terminated the agreement and plaintiff's authority four months before November 15, 1945, the date upon which the agreement expired. This contention is untenable and the cases cited by plaintiff may be differentiated on their facts. The case of *Roth* v. *Moeller*, 185 Cal. 415 [197 P. 62], cited by plaintiff in support of his contention, is to the contrary. As in the instant case, the broker was nonsuited in his action to recover a commission under a contract that had been revoked by the owner within two days after its execution notwithstanding a provision that it was irrevocable for 10 days. In that case the court held (p. 419) that the principal violated no rights of the agents in revoking their authority prior to the expiration of the 10-day period during which the offer was expressly made irrevocable; that the offer to the proposed purchaser and the agreement not to revoke were made without

consideration and were therefore revocable at any time before acceptance; that the offer and the authority of the agents if not sooner revoked would amount to nothing after the 10-day period had expired; that that period was a limitation upon, rather than a grant of, the time for performance by the agents. In the instant case there was no provision that the offer was irrevocable or that the authority of plaintiff should remain irrevocable for any period. In the case of *Brown* v. *Pforr*, 38 Cal. 550, the principal offered to pay a commission to the brokers if they would find within one month from the date of the agreement a purchaser for a certain parcel of real estate. The court held (p. 553) that the restriction was intended for the benefit of the defendant and not of the plaintiffs; that the limitation was that the defendant would pay the agents the stipulated price for their service if they completely performed it within one month, otherwise he would not pay anything; that there was nothing directly or impliedly affecting the question of revocation, and under no circumstances can a mere limit as to the time allowed for the performance of a contract of agency to sell land be construed into an agreement on the part of the principal not to revoke the power. The rule stated in the foregoing cases is reaffirmed in *Brown* v. *De Carlo*, 97 Cal.App. 426 [275 P. 992], and *M. V. B. MacAdam Co., Inc.* v. *Bryant*, 86 Cal.App. 74, 79 [260 P. 298].

The agreement between plaintiff and defendant did not create an agency coupled with an interest. Cases cited with reference to such a contract need not be noticed.

Plaintiff cites several cases announcing the familar rule that a broker is entitled to his commission when he produces a purchaser who is ready, able and willing to buy upon the seller's terms. Those decisions do not aid plaintiff since he produced a party who, though apparently willing to take a lease on the property on its own terms, did not accede to the owner's requirements and there was never a meeting of the minds of the parties.

When the trial reached the point where it appeared without contradiction (1) that the agreement for payment of commission was in writing, (2) that one of the conditions of the agreement remained unfulfilled, to wit, the contract for the construction of the building had never been executed, and (3) that plaintiff had not produced a lessee who was ready, able and willing to execute a lease on the owner's terms, the

court ·correctly sustained an objection to the introduction of further evidence and entered a judgment of nonsuit.

Judgment affirmed. The purported appeal from the order denying a new trial is dismissed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 31, 1949.