[Civ. No. 21017.   First Dist., Div. Two.   Sept. 13, 1963.]

GEORGE PAGE, Plaintiff and Respondent, v. EDWARD PRINCIPE et al., Defendants and Appellants.

Gross, Gross & Rose and Harry M. Gross for Defendants and Appellants.

Orlando J. Bowman and Edmund J. Regalia for Plaintiff and Respondent.

AGEE, J.—Plaintiff received a judgment of $4,000 against defendants as and for the reasonable value of his services to them. Defendants appeal.

The defendants, who are husband and wife, owned a parcel of real property near Hayward, California, situated within an area of condemnation undertaken by the Hayward Union High School District. The property was improved by three single family dwellings and one duplex. The district had included it in an eminent domain action filed in August 1956.

Plaintiff was a real estate broker and appraiser. Defendant husband's sister ("Dolly") was employed in the office of the City Clerk of Hayward. At the time in question, plaintiff was doing most of the appraisals for the City of Hayward with respect to right-of-way acquisitions. The sister asked plaintiff if he could advise her brother (defendant) as to how to proceed with respect to the condemnation. Shortly thereafter, plaintiff received a telephone call from the defendant wife. An appointment was arranged and plaintiff met with the defendants at their home. This was in February 1957.

At this meeting plaintiff advised the defendants generally about condemnation proceedings and specifically advised them to hire an appraiser so that they could better learn the value of their property. He also advised them to hire an attorney "if they were unhappy with the School's approach to them."

Plaintiff makes no claim that he was employed by the defendants at this conference nor does he seek any compensation therefor. He testified that he had talked to defendants merely "out of courtesy to Dolly."

In the early part of May 1957, defendants asked plaintiff to represent them in negotiating a settlement with the school district, stating that they desired to avoid a trial. Plaintiff agreed to accept the employment and thereupon commenced

work, the nature and extent of which will be discussed hereafter.

Plaintiff's work was concluded in January 1958. On January 13, 1958, a final meeting was held, attended by plaintiff, defendants and their attorney, William S. Perovich. At that time the defendants executed a written authorization empowering plaintiff to make a final settlement on the terms contained therein.

On the following day, January 14, 1958, plaintiff and the attorney for the school district orally agreed to a settlement in accordance with said authorization.

Plaintiff immediately advised Mr. Perovich and the defendants of the settlement but cautioned them to take the necessary steps to confirm this formally. This concluded plaintiff's services. (The transfer of the property was effected through a title company on or about January 30, 1958.)

*Sufficiency of evidence to support findings.* Defendants attack findings I, II, IV and V. The only one not attacked is III, which reads as follows: "That defendants, on January 13, 1958, authorized plaintiff in writing to negotiate a sale of said property on stated terms acceptable to defendants." This refers to the authorization already discussed above.

Finding I is as follows: "That plaintiff was at all times *relevant to this cause* a qualified real estate appraiser and a duly licensed real estate broker." (Italics ours.) This finding is supported by plaintiff's testimony that he was so licensed and there is no evidence to the contrary.

Although plaintiff's license was revoked on March 20, *1962,* the services for which he recovered a judgment were rendered between early May 1957 and January 14, 1958. Hence, this is the period "relevant to this cause."

Defendants cite sections 10136 and 10138 of the Business and Professions Code. Both fix the crucial time as the time when the alleged fee is earned. Section 10136 reads in part as follows: "No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action . . . without alleging and proving that he *was* a duly licensed real estate broker or real estate salesman *at the time the alleged cause of action arose.*" (Italics ours.)

Section 10138 provides a misdemeanor penalty for anyone who accepts compensation who does not prove "that he is a regularly licensed real estate broker *at the time such compensation is earned.*" (Italics ours.)

The same point was raised in *Koeberle* v. *Hotchkiss*, 8 Cal.App.2d 634 [48 P.2d 104], wherein it was held that a real estate broker need be licensed only at the time of earning his compensation.

Finding II is that plaintiff and defendants entered into an oral contract in May 1957, pursuant to which plaintiff was employed by defendants to appraise defendants' real property and to negotiate a settlement and sale thereof to the Hayward Union High School District, for which services defendants agreed to pay to plaintiff the reasonable value thereof.

██ Defendants argue that this finding is based upon plaintiff's unsupported testimony and that he is unworthy of belief. This contention ignores the fundamental principle that the credibility of a witness is for the trier of the facts.

The main point of attack on plaintiff's credibility is that he testified falsely at the trial (held in 1962) that he was a real estate broker, when in fact his license as such had been revoked some six weeks before.

Defendants base their charge of falsehood upon plaintiff's answers to the following questions: ''Q. Mr. Page, you are the plaintiff in this action? A. Yes, Mr. Regalia. Q. Will you state your occupation? A. I am an appraiser — real estate broker, my principal work being appraisal. Q. And is this the same occupation at which you were engaged in 1957-58? A. That is correct.'' Thereupon follows a statement as to qualifications, which includes the following: ''[A]fter college, 1948, I received a real estate broker's license and a business opportunity license; ...''

As defendants point out, ''[i]n truth and in fact respondent was not a duly licensed real estate broker on May 7, 1962,'' (the day of the trial) but whether defendants' conclusion that plaintiff thereby *''wilfully* swore falsely''* is justified may well be debatable. (Italics ours.)

In any event, the trial court was fully advised of the foregoing on the hearing of defendants' motion for a new trial. It then had the opportunity to reweigh the credibility of plaintiff and to set aside the judgment on the ground of the insufficiency of the evidence. It did not do so.

The trial court made the following statement at said hearing with respect to this point: ''As to Mr. Page's [plaintiff's] statement that he is or was at the time of the trial a real estate broker, that he was incorrect in and may have knowingly misstated the facts; but it wasn't essential to my

passing upon the case as to whether or not he was a real estate broker at that time [i.e., at the time of trial]."

■ The second phase of defendants' attack upon Finding II is that there is no evidence to support the finding that, "for which [services] the defendants agreed to pay to plaintiff reasonable value."

This appears to be true in the sense that there was no *express* agreement to this effect. The "percentage of lift" method was discussed, as well as other methods. Plaintiff testified as follows: "Mr. Principe [defendant] indicated that his preference was for the percentage lift." However, the parties never agreed upon what the "lift" should include. As will be seen hereafter, the defendants obtained substantially more in the final settlement than just the sale price itself.

In our opinion, this case falls directly within the purview of section 1611 of the Civil Code, which provides in part as follows: "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, ... the consideration must be so much money as the object of the contract is reasonably worth."

There are many contract compensation cases in which the courts have sustained findings based on "reasonable value," where the parties had reached no agreement on the compensation to be paid but did contract for the services rendered (e.g., *Zint* v. *Topp Industries, Inc.* (1960) 184 Cal.App.2d 240, 244 [7 Cal.Rptr. 302] ; *Caminetti* v. *National Guaranty Life Co.* (1942) 56 Cal.App.2d 92, 95 [132 P.2d 318]).

■ Finding IV is as follows: "That plaintiff duly performed all things on his part required to be performed, including appraisal of said property, and resulting in sale of said property to the Hayward Union High School District on terms satisfactory to the defendants."

Defendants attack this finding on the isolated ground that plaintiff had not performed *all* things on his part to be performed, in that he had not discussed the matter with the appraisers for the school district.

Plaintiff testified in this respect as follows: "There was a meeting I had with Mr. Arnold Anderson and Mr. Hugh Owens, appraisers for the School at that time, and this is a recapitulation of what I felt I would like to present to them."

Neither Anderson nor Owens was called as a witness, although the foregoing testimony was given at the start of

the two-day trial. However, on their motion for a new trial, defendants produced declarations of Anderson and Owens that they had not met with plaintiff.

Later, Anderson made a "Further Declaration," which was filed. It explained the circumstances under which he had made the first declaration.

The "Further Declaration" states: "Later, on reflection, I reconsidered the fact that Mr. Page had testified that he had received special permission from Mr. James Jefferis of the Alameda County District Attorney's Office to speak to Mr. Owens and me regarding the Principe matter. This refreshed my memory to the extent that I do recall a 'special permission' talk with someone at about the time that the Hayward Union High School District appraisals and condemnation proceedings were in progress. Therefore, *Mr. Page's testimony is consistent with my recollection of such a talk.* I do not, however, recall specifically the meeting with Mr. Page because of the long length of time which has elapsed, and the extreme pressure of business during the time of the said condemnation and appraisal proceedings. I wish to add that *it was my understanding at the time of the said appraisal and condemnation proceedings that Mr. Page was representing Mr. and Mrs. Principe.*" (Italics ours.)

We need not discuss whether the statements contained in the declarations of Anderson and Owens constitute "newly discovered evidence" or whether defendants could not, with reasonable diligence, have discovered and produced such evidence at the trial (Code Civ. Proc., § 657).

It is sufficient to say that the declarations were before the trial court at the hearing of defendants' motion for a new trial and, as we have stated before, such motion was denied. There is no showing that the trial court abused its discretion in so ruling.

Lastly, defendants attack the finding (V) that the reasonable value of the plaintiff's services is $4,000. The contention is that the court must have "some type of opinion evidence or evidence of the customary rate of compensation for appraisers" before it can determine the reasonable value of plaintiff's services herein. We do not agree.

*In Trumbo* v. *Bank of Berkeley,* 77 Cal.App.2d 704 [176 P.2d 376], the plaintiff was an organizer and promoter for a proposed bank. He brought an action to recover for the reasonable value of his services. These services consisted of interviews with the Superintendent of Banks, securing infor-

mation necessary to the issuance of a permit and ascertaining the procedure to be followed, going over the pertinent statute in the Bank Act, preparing a detailed plan of operation for the bank, making a detailed study of traffic problems in order to locate a proper site for the new bank, looking over and investigating eight different sites, making sketches of a proposed layout for the bank, holding conferences with the owners of some of the proposed sites and discussing purchase price with them.

The case was tried by a jury, which returned a verdict of $5,000 in favor of plaintiff. The judgment entered therein was affirmed on appeal. Mr. Justice Peters, writing the opinion, pointed out that, even though there was no expert evidence introduced by plaintiff from which the jury could fix the reasonable value of the services, ''[t]hey were of a type that their value could be appraised by any reasonably intelligent layman.'' (P. 712.)

We think the services involved herein were of the same type.

Although plaintiff testified that he told the defendants that he ''felt that $5,000 was a reasonable fee,'' the court refused to adopt this opinion and determined the reasonable value of the services to be $4,000.

In general, plaintiff performed the following services: familiarized himself with the neighborhood and the general area in order to determine the pattern of sales and development; hired an airplane and had aerial photographs taken; hired a researcher and had all sales within a half square mile researched for the past seven years; examined plans of the buildings on the subject property and the buildings themselves; consulted with defendants after assembling the data; prepared a summary of the appraisal; held a meeting with the school district appraisers; hired his own attorney to prepare an answer to the district's complaint when defendants refused to retain an attorney and the district's attorney was threatening to take their default; the answer was filed in propria persona; had many conferences with the district's attorney and several conferences with the attorney finally consulted by defendants *after* a settlement had been reached; attended the pretrial conference with one of defendants; had a final conference with the district's attorney at which time settlement was reached.

Plaintiff was corroborated by the two attorneys (Jefferis and Perovich) in all respects of which they had knowledge.

Defendants next argue that ''any recovery for respondent

(plaintiff) must be limited by the terms of the oral contract.
. . ." They then attempt to demonstrate that under the
"percentage of lift" method, plaintiff's recovery would be
less than $4,000. (Plaintiff contends it would be $5,280.)

The fallacy of defendants' argument is that the parties
never reached an agreement as to what method would be used
to fix plaintiff's compensation. Plaintiff so testified and
defendants denied that there was any discussion at all of the
subject of compensation.

The trial court indicated very clearly in its findings that it
was not relying upon any alleged oral contract of the parties
as to the method to be used in fixing the amount of the
compensation but was fixing such amount based upon the
agreement which the law implies to pay the reasonable value
of the services rendered.

*Disqualification of trial judge.* At the conclusion of the
evidence and the arguments of respective counsel, the trial
judge announced his decision. He used rather strong lan-
guage in describing defendants' case, saying that, *inter alia,*
"I have seldom heard a more outrageously false fabric pre-
sented to a court" and that "I find it utterly impossible to
believe the story told by the defendants."

One example may indicate what may have prompted the
judge's statements. The defendant wife testified that, after
the settlement had been concluded, she asked plaintiff if they
owed him anything and that he replied, according to her:
"You don't owe me a thing — maybe some baby-sitting some
time."

Our Supreme Court resolved such a contention as
this in the following words: "[T]he rule appears to be that
when the state of mind of the trial judge appears to be
adverse to one of the parties but is based upon actual observ-
ance of the witnesses and the evidence given during the trial
of an action, it does not amount to that prejudice against a
litigant which disqualifies him in the trial of the action. It is
his duty to consider and pass upon the evidence produced
before him, and when the evidence is in conflict, to resolve
that conflict in favor of the party whose evidence outweighs
that of the opposing party. The opinion thus formed, being
the result of a judicial hearing, does not amount to that bias
and prejudice contemplated by section 170, subdivision 5, of
the Code of Civil Procedure as a basis for a change of venue
or a change of judges." (*Kreling* v. *Superior Court* (1944)
25 Cal.2d 305, 312 [153 P.2d 734].)

While defendants now argue that the trial ·judge should have disqualified himself from hearing the motion for a new trial, no motion to disqualify him was ever made. The point is now being raised for the first time on appeal. It is without merit.

All of the points raised by defendants on their motion for a new trial have already been sufficiently discussed.

The judgment is affirmed and the appeal from the order denying a new trial is dismissed, it being a nonappealable order.

Shoemaker, Acting P. J., concurred.