[Civ. No. 21025. Fourth Dist., Div. Two. Sept. 25, 1979.]

WILLIAM H. CLINE, Plaintiff and Appellant, v.
HENRY S. YAMAGA et al., Defendants and Respondents.

COUNSEL

Hayden & Nelson and Lyle Nelson for Plaintiff and Appellant.

Thomson & Nelson and Alexander D. Thomson for Defendants and Respondents.

OPINION

**THE COURT.**—Plaintiff sued to recover a real estate broker's commission allegedly due under a written agreement with defendants executed in 1965. Trial was to the court and decision was in favor of defendants, the court concluding that plaintiff's recovery was barred by Business and Professions Code section 10136 which requires proof in an action for a real estate commission that the plaintiff was duly licensed at the time the alleged cause of action arose. Plaintiff appeals from the judgment.

The facts are not in dispute. In 1963 defendants owned approximately 12 acres of land in Norwalk. Plaintiff, who was at that time duly licensed, approached defendant Yamaga and offered to assist Yamaga in developing the property. Yamaga agreed and plaintiff introduced Yamaga to Bruce E. Gelker who envisioned development of a Saddleback Inn motel complex on the site. Gelker had already developed Saddleback Inn complexes in other locations. In 1964 Gelker entered into an agreement with defendants whereby he leased six acres with an option to lease the remaining six acres. Plaintiff was to receive a commission of $18,750 for his services.

The plans were revised in 1965. Donald D. Randall entered the project as a lender. At Randall's request, a new lease and option were drawn up

with Randall as lessee and optionee. At this time plaintiff and defendants entered into the written commission agreement which is the subject of this suit. The total commission was reduced to $15,500 and was divided into two equal parts. The first part was admittedly paid and need not concern us. Regarding the second part, the agreement provided: "A similar commission in the amount of $7,750 shall be due and payable on the same terms and conditions as referred to above in consideration for the execution of the Option dated May 8, 1965 between the above-mentioned PARTIES OR THEIR ASSIGNEE. In the event the option is not exercised and a lease is not executed, no commission is due the broker."

On the leased six acres a Saddleback Inn was constructed under a sublease from Randall to Casa Camino Real, a partnership consisting of Gelker, Sanford Arkin, and Roy Giordano. In 1968 Casa Camino Real obtained new financing from Massachusetts Mutual. The loan from Randall was paid and the lease and option were assigned by Randall to Casa Camino Real.

The option on the additional six acres was scheduled to expire on December 31, 1969.[1] In June 1968 defendants and Casa Camino Real signed another option agreement to expire December 31, 1973. Whether this was in substance a new option or merely an extension of the old option is disputed.

To obtain additional financing for enlarging the facilities on the original six acres, an organization known as Cebart, an investment vehicle for three doctors, was brought into the project. In late 1968 the lease and option were assigned by Casa Camino Real to a corporation named Saddleback Inn Norwalk, Inc., owned by Gelker, Arkin, Giordano, and the three Cebart doctors.

In January 1972 negotiations resumed in earnest concerning the remaining six acres. The land was eventually placed under two separate leases; two acres were leased in February 1972 and the remaining four acres in December 1973. The two-acre parcel, leased by Saddleback Inn Norwalk, Inc., was used to build additional rooms and a swimming pool for the motel. The four-acre parcel was leased by Saddleback Square, a partnership consisting of the six individuals who owned Saddleback Inn Norwalk, Inc. An office complex was constructed on the four-acre parcel.

---

[1] The option stated that it was for a term of four years commencing January 1, 1965 and ending December 31, 1969. The period described is, of course, five years rather than four. We assume, without deciding, that the dates mentioned would be controlling.

The terms of the leases are not identical to the terms of the lease contemplated by the option agreement of 1965. Not only was the six acres split into two parcels, but a subordination clause was added permitting Massachusetts Mutual to obtain a first trust deed securing a loan for $1.9 million covering the eight acres on which the motel was situated.

Plaintiff's active participation in the development project ended in 1965. In 1967 he moved to Missouri and his California broker's license expired in 1969 for nonpayment of license fees.

Three alternative defenses to plaintiff's action were presented. Defendants argued that the leases executed in 1972 and 1973 did not constitute an exercise of the 1965 option, that plaintiff's action was barred by Business and Professions Code section 10136 because plaintiff was not duly licensed when the alleged cause of action arose in 1973, and that the action was barred by the statute of limitations.

The trial court found that the action "was not barred by the applicable statute of limitations," but that plaintiff was not duly licensed when the alleged cause of action arose as required by Business and Professions Code section 10136. On the remaining issue, the findings are inconclusive. The court found that the parties to the leases executed in 1972 and 1973 were "in privity with the parties to the Option referred to in the Commission Agreement." Furthermore, the court rejected a proposed finding stating: "The leases executed on February 10, 1972 . . . and December 14, 1973 . . . did not constitute an exercise of the Option referred to in the Commission Agreement . . . and were not entered into pursuant to the Option but rather pursuant to independent and arms' length negotiations between the parties thereto." However, the court did not make a finding that the leases of 1972 and 1973 constituted an exercise of the option of 1965.

On this appeal, plaintiff contends the court erred in concluding that the action was barred by Business and Professions Code section 10136. Defendants insist that the action was barred, but they also maintain that the trial court's decision can be upheld on the ground that the 1965 option was never exercised.

I

Business and Professions Code section 10136 provides: "No person . . . acting in the capacity of a real estate broker or . . . salesman . . . shall

bring . . . any action . . . for the collection of compensation . . . without alleging and proving that he was a duly licensed real estate broker or . . . salesman at the time the alleged cause of action arose."

A cause of action arises when the liability or obligation is established and suit may be brought. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 263, pp. 1116-1117.) A broker's action for a commission arises when the commission becomes due and payable, and accordingly plaintiff's alleged cause of action on the commission agreement arose in 1973 when all of the additional six acres were put under lease by defendants. As plaintiff admittedly was not duly licensed in 1973, a literal application of section 10136 bars the action.

Statutes are ordinarily interpreted according to their plain meaning, the " 'usual, ordinary import of the language employed in framing them.' " (*Moyer* v. *Workmen's Comp. Appeals Bd.*, 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]. See also, *In re Andrews*, 18 Cal.3d 208, 212 [133 Cal.Rptr. 365, 555 P.2d 97]; *Cadiz* v. *Agricultural Labor Relations Bd.*, 92 Cal.App.3d 365, 372 [155 Cal.Rptr. 213]; *Teachers Management & Inv. Corp.* v. *City of Santa Cruz*, 64 Cal.App.3d 438, 446 [134 Cal.Rptr. 523].) An even more fundamental rule of construction, however, is that statutes are to be construed to effect the intent of the Legislature. (*People* v. *Ruster*, 16 Cal.3d 690, 696 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]; *Kesler* v. *Department of Motor Vehicles*, 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]; *People* v. *Mel Mack Co.*, 53 Cal.App.3d 621, 626 [126 Cal.Rptr. 505].) "The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (*Silver* v. *Brown*, 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689]. See also, *Teachers Management & Inv. Corp.* v. *City of Santa Cruz, supra*, 64 Cal.App.3d at p. 446; *Golden* v. *City of Oakland*, 49 Cal.App.3d 284, 288 [122 Cal.Rptr. 400].)

Some years ago this court remarked, in an opinion by Justice Kaufman, that section 10136 is similar in purpose and wording to section 7031 of the Business and Professions Code dealing with actions for compensation for services as a contractor, and that our Supreme Court has held, in regard to the latter provision, that literal observance is not required if it would transform the statute into an unwarranted shield for the avoidance of a just obligation. (*Schantz* v. *Ellsworth*, 19 Cal.App.3d 289, 292 [96 Cal.Rptr. 783], citing *Latipac, Inc.* v. *Superior Court*, 64

Cal.2d 278, 281 [49 Cal.Rptr. 676, 411 P.2d 564].) ■ We also observed that the purpose of the licensing requirement is to protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners. (*Schantz, supra,* at pp. 292-293. See also, *Davis* v. *Chipman,* 210 Cal. 609, 620-623 [293 P. 40].)

The purpose of section 10136 is in no way served by applying it to bar plaintiff's action under the facts of the present case. Protection of the public requires that the broker or salesman be duly licensed at the time that services are rendered. Plaintiff's services were rendered from 1963 to 1965, and afterwards plaintiff was not expected to perform, nor did he perform, any additional services for defendants. We conclude, accordingly, that plaintiff's action is not barred by section 10136.

There is precedent for our conclusion. The same result was reached under similar facts in 2 related cases decided over 40 years ago. (*Koeberle* v. *Hotchkiss,* 8 Cal.App.2d 634, 640-641 [48 P.2d 104]; *Koeberle* v. *Hotchkiss,* 4 Cal.App.2d 252, 256 [40 P.2d 911]. Accord; *Page* v. *Principe,* 220 Cal.App.2d 151, 154-155 [33 Cal.Rptr. 836].) For services rendered in procuring certain oil leases, a broker was to receive 10 percent of any and all royalties when and as received by the lessor. After some years the lessor discontinued payments to the broker claiming, among other things, that the broker was no longer entitled to his percentage because his license had expired. The reviewing court made short work of the contention, noting that "the maturing of defendants' obligation to plaintiff as the installments were paid in by the lessee required no act on the part of plaintiff which would come within the purview of the Real Estate Brokers Act." (*Koeberle, supra,* 4 Cal.App.2d at p. 256.)

Similarly, exercise of the 1965 option, which under the commission agreement would give rise to plaintiff's cause of action, did not require any further service to be performed by plaintiff and so it is sufficient, for purposes of section 10136, that plaintiff was duly licensed at all times when his services were being performed.

## II

■ The issue remaining is whether the judgment may be upheld on the theory that the 1965 option was never exercised.

■ A judgment correct under any applicable legal theory will not be reversed merely because the trial court followed an erroneous path of

reasoning, but an appellate court will not employ a theory as grounds for affirmance where that theory rests on determinations of fact, the evidence on the facts was conflicting, and the conflicts are not resolved by the trial court's express or implied findings. (*Coalition for L. A. County Planning etc. Interest* v. *Board of Supervisors,* 76 Cal.App.3d 241, 246 [142 Cal.Rptr. 766]; *Zak* v. *State Farm etc. Ins. Co.,* 232 Cal.App.2d 500, 506 [42 Cal.Rptr. 908].)

■  "An owner and broker may, if they wish, enter into a binding agreement that no commission shall be considered earned until the happening of a certain specified event . . . . When a condition precedent is adopted by the parties to a contract, the court will exact a substantial if not strict observance of the provisions before finding liability." (*Cochran* v. *Ellsworth,* 126 Cal.App.2d 429, 439 [272 P.2d 904]. See also, *Peterson* v. *Montgomery Holding Co.,* 89 Cal.App.2d 890, 894 [202 P.2d 365].)

■  In the present case, plaintiff has conceded that there was not a strict observance of the condition precedent. The 1965 commission agreement provided that the second half of plaintiff's commission would be due only if the option was exercised. The option was formally cancelled in 1968 and a new option was signed. Moreover, the leases ultimately signed were not identical to the lease proposed by the original option agreement. Nevertheless, plaintiff maintains that there has been substantial compliance because the identical property was ultimately leased and developed for the same project by parties in privity with the original optionee.

■  Where a broker enters into a special contract with the property owner conditioned on sale or lease of the property at a certain price or on certain terms, and the owner sells or leases the property to a party procured by the broker at a lower price or on terms less favorable to the owner, the broker is not entitled to a commission in the absence of bad faith. (*Palmtag* v. *Danielson,* 30 Cal.2d 517, 521 [183 P.2d 265]; *Williams* v. *United California Bank,* 223 Cal.App.2d 309, 314 [35 Cal.Rptr. 788]; *Denbo* v. *Weston Investment Co.,* 112 Cal.App.2d 153, 157-158 [245 P.2d 650]; *Peterson* v. *Montgomery Holding Co., supra,* 89 Cal.App.2d 890, 894 [202 P.2d 365]; *Backman* v. *Guadalupe Realty Co.,* 78 Cal.App. 347, 351-352 [248 P. 296].) Thus, the issue of substantial compliance with a broker's special contract depends primarily on whether the owner has realized the contemplated benefit from his land. Any significant reduction in advantage to the owner will defeat the broker's right of recovery under a special agreement.

What constitutes substantial compliance or substantial performance is a question of fact to be decided by the trier of fact. (*Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 187 [14 Cal.Rptr. 297, 363 P.2d 313]; *Fontaine* v. *Storrie,* 7 Cal.App.2d 104, 107 [45 P.2d 361].) This is particularly true where, as here, the factors to be analyzed are complex and the result will have little value as precedent. (See generally, Weiner, *The Civil Jury Trial and the Law-Fact Distinction* (1966) 54 Cal.L.Rev. 1867.) ■ In the present case, the trial court made no finding on this issue; the court rejected a proposed finding that the option was not exercised but the court did not make a counterfinding that the option was exercised. Evidently, the court decided it was unnecessary to resolve the question in view of its conclusion that the action was barred by section 10136.

Although the basic facts are undisputed, they are subject to conflicting inferences in regard to the factual question of whether there was substantial fulfillment of the conditions of the commission agreement. Therefore, we are unable to accept defendants' suggestion that the judgment be affirmed on the alternative ground that the option was never exercised. This is an issue to be resolved by the trier of fact. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 337, pp. 3139-3140.)

The judgment is reversed.