Filed 12/4/13  Serratos v. Countrywide Home Loans CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| JUAN SERRATOS et al., | 2d Civil No. B236996 |
| Plaintiffs and Appellants, | (Super. Ct. Nos. CIV 245197 & 56-2009-00361735) |
| v. | (Ventura County) |
| COUNTRYWIDE HOME LOANS et al., | |
| Defendants and Respondents. | |

Here a simple refinance of a residential mortgage turned into a complex problem.  The facts involve, among other things, the borrowers' unsuccessful attempt to rescind the loan transaction, a title insurer's failure to disclose a recorded trust deed, the loss of funds deposited in escrow when regulators seized the escrow company, the borrowers' lawsuit resulting in a settlement requiring lender to make a new loan, a mistaken attempt at foreclosure, and the instant lawsuit where borrowers seek cancellation of the lender's notes and trust deeds and quiet title based on the settlement agreement.

The court entered judgment for defendant lender.  The court found the lender substantially performed the terms of the settlement.  Lender offered to

modify an existing loan on the same terms as the new loan contemplated in the agreement. We affirm.

FACTS

Juan and Rosa Serratos (the Serratos), own a home in Port Hueneme. They refinanced their home loan a number of times.

In March 2006, Citi Mortgage (Citi) held a first trust deed on the Serratos' home in the amount of $308,000. In that month, the Serratos obtained a home equity line of credit (HELOC) from Citi in the amount of $150,000. The Citi HELOC was secured by a second deed of trust.

The Serratos wanted to refinance the first trust deed. They did not, however, want to refinance the Citi HELOC because it was being utilized by family members. A loan broker, 1st Mortgage, contacted the Serratos. 1st Mortgage had a broker agreement with Countrywide Home Loans, Inc. The agreement stated that the parties were independent of each other and that neither was a partner, joint venture, agent or employee of the other.

The Serratos applied for a loan through 1st Mortgage. They disclosed the Citi HELOC. But through no fault of the Serratos, the Citi HELOC was not disclosed on the loan application.

1st Mortgage submitted the Serratos' loan application to Countrywide. Countrywide approved two loans: one for $432,000 (Loan 33) and another $54,000 HELOC (Loan 25) for a total of $486,000. After paying off Citi's first trust deed and costs, the loans would yield approximately $167,000 in cash to the Serratos. Countrywide believed its loans would be secured by first and second trust deeds. Countrywide was unaware of the Citi HELOC, and its title insurer failed to disclose it in its title report.

Escrow closed and paid off the Citi first trust deed. But because Countrywide's title insurer did not report the $150,000 Citi HELOC, it was not paid. The Citi HELOC moved into first position with Countrywide's trust deeds in second and third positions.

2

After escrow closed, the Serratos unsuccessfully attempted to rescind the transaction. The $167,000 cash the Serratos were to receive from the transaction remained in escrow.

Countrywide sold the loans to the Bank of New York (BONY) Eventually, it repurchased Loan 33, but BONY still owns Loan 25. Bank of America services Loan 25 under a pooling service agreement.

In December 2006, the Serratos sued Countrywide and others seeking rescission and damages. The Serratos and Countrywide agreed to settle in September 2006. At the time of the settlement, Countrywide was aware of the Citi HELOC.

The settlement agreement provides in part:

Countrywide will make a new first position loan to the Serratos in the amount of $308,850.82 secured by the Serratos' primary residence. The new loan will bear a rate of 5.5 percent due and payable in 30 years. The Serratos agree to cooperate fully in the origination and underwriting of the new loan.

On or before the close of escrow on the new loan, Countrywide shall deliver to escrow full reconveyances of the deeds of trust securing Loans 25 and 33.

Countrywide releases the Serratos from all claims for "interest, cost of loans or any other charge" in connection with Loans 25 and 33. The Serratos agreed to authorize escrow to return the $167,000 to Countrywide.

Eventually, regulators seized the escrow company, and Countrywide never recovered its money. Countrywide does not dispute that it must absorb the loss.

Under the settlement agreement the Serratos were not making payments on Countrywide Loans 25 and 33. Countrywide mistakenly began foreclosure proceedings. The foreclosure proceedings prompted the Serratos to bring the instant lawsuit. Their complaint asserted four causes of action, all related to Loans 25 and 33: cancellation of promissory notes, cancellation of deeds of trust,

3

quiet title and the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act). The Serratos later dismissed the cause of action relating to the Rosenthal Act.

The gravamen of the complaint is that Countrywide breached the settlement agreement by failing to make a new loan, failing to reconvey Loans 25 and 33, and by initiating foreclosure proceedings.

Countrywide defended by asserting that: it will reconvey the deed of trust securing Loan 33, the $54,000 HELOC, so that it no longer encumbers the property; it requested Citi to voluntarily subordinate its HELOC to Loan 25, but Citi has refused; Countrywide has offered to leave Loan 25 in its second position, but modify it to the same terms as described in the settlement agreement for the first position loan; Countrywide's claim against its title insurer will not be ripe unless and until the Citi HELOC is foreclosed; reconveyance of Loan 25 will defeat any claim it may have against its title insurer; and modification of Loan 25 to the same terms as the new loan provided in the settlement agreement will substantially comply with the agreement.

After trial by the court, the court made the following findings: Countrywide admitted its foreclosure attempt was in error; the Serratos have not been required to make payments on Loans 25 and 33 since September 2007, approximately four years, nor has interest on the loans accrued. Citi is not willing to subordinate its HELOC to Countrywide's loan. Countrywide is not required to purchase Citi's HELOC. The Citi HELOC remains in first position. By modifying the existing loan instead of paying off the Citi HELOC, Countrywide's claim against its title insurer is preserved. Countrywide is responsible for making the purchaser of the $432,000 note whole. The parties agree there is no dispute regarding the $54,000 note and trust deed. It will be reconveyed and no longer encumber the property. "Both parties agree that there is no economic difference to the [Serratos] whether there is a new loan of $308,000 or a modified note of $308,000 as long as the terms are the same."

4

The trial court concluded that Countrywide substantially complied with the settlement agreement. The trial court gave judgment to Countrywide on all causes of action.

Countrywide moved to enforce the settlement agreement. The trial court granted the motion. It ordered the Serratos to sign a loan modification containing the same terms as the loan described in the settlement agreement.

DISCUSSION

I.

The Serratos contend they were released from any obligation under Loan 25.

The Serratos rely on the portion of the settlement agreement releasing them from any and all claims for "interest, cost of loans, or any other charges" in connection with Loan 25. It is true the agreement releases the Serratos from the obligation to pay interest costs and charges. But the provision does not release the Serratos from payment of the principal.

In fact, paragraph 2.1.7 of the settlement agreement provides: "On or before the close of a new loan, Countrywide shall deliver to the escrow holder for the new loan full reconveyances of the deeds of trust securing [Loans 25 and 33] in a form that can be recorded with the County Recorder's Office, sufficient to remove the deeds of trust securing [Loans 25 and 33] as encumbrances on the Serratos' property."

The only reasonable interpretation of the paragraph is that Countrywide may leave Loans 25 and 33 in place until close of escrow on the new loan contemplated by the agreement.

The Serratos argue that cancellation and reconveyance of Loans 25 and 33 are material terms of the agreement. But Countrywide is not obligated to cancel and reconvey until close of escrow on the new loan.

5

The Serratos argue that the trial court revived Loans 25 and 33.  But the loans were never terminated.  The principal remains until Countrywide reconveys them, not later than the close of escrow on the new loan.

II.

The Serratos contend the trial court erred in applying the doctrine of substantial performance.

A party who has substantially performed a contract may enforce it, even though the performance has not precisely met the terms of the contract.  (See *Cline v. Yamaga* (1979) 97 Cal.App.3d 239, 247.)  The question is whether the promissee has substantially realized the contemplated benefit from the contract.  (*Ibid.*)  What constitutes substantial performance is a question of fact to be decided by the trier of fact.  (*Id.* at p. 248.)  Here the trial court found that Countrywide substantially performed the settlement agreement.

The settlement agreement requires a "new loan" in the "first position."  The Serratos insist that their complaint is not that the loan Countrywide offered is in the second position.  Instead, their complaint is that the loan Countrywide offered is not a "new loan," but a modified existing loan.

The trial court found that the parties agree there is no economic difference to the Serratos whether there is a new loan or modified loan, as long as the terms are the same.  The Serratos do not challenge this finding.  They fail to suggest how it could make the slightest difference to them whether the loan is new or modified.  In fact, a modified loan is a new loan secured by an existing trust deed.  Countrywide at the very least has substantially performed.

It appears the Serratos believe they are entitled to hold their property free and clear of all trust deeds except the Citi HELOC.  In their view, Countrywide, having done them the favor of paying off their first trust deed, should simply go away.  Nothing would justify that result.

The Serratos' causes of action for quiet title and to cancel Countrywide's notes and trust deeds are equitable in nature.  (See *Ebbert v.*

6

*Mercantile Trust Co.* (1931) 213 Cal. 496, 499.) In *Ebbert*, as here, plaintiff sought cancellation of notes and trust deeds based on the beneficiary's failure to fully perform a contract providing for the cancellation of the notes and trust deed in the event of the beneficiary's failure to perform. Our Supreme Court held "[t]he notes and deeds of trust should not be canceled unless defendants are reimbursed for the reasonable value of the benefits already conferred by their part performance." (*Id.* at p. 501.)

Countrywide conferred benefits on the Serratos, including paying off Citi's first trust deed in the amount of $307,000. It also relieved the Serratos of any obligation to pay interest for approximately four years. In exercising its equitable powers the trial court must balance the equities. (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1133-1134.) As in *Ebbert*, there is no justification for cancelling Countrywide's notes and trust deeds without the Serratos' tender of the return of the benefits conferred on them by Countrywide, including $307,000 plus interest for four years. There is no evidence the Serratos made any such tender. The Serratos are certainly not entitled to hold their property free and clear save only for the Citi HELOC.

The Serratos argue that the settlement agreement contains no provision requiring such a tender. But the requirement that the Serratos tender repayment of the benefits received does not lie in contract. Instead, it is inherent in the equitable relief the Serratos now seek.

### III.

The Serratos contend the trial court violated the parol evidence rule by materially altering the settlement agreement.

The parol evidence rule prohibits the introduction of extrinsic evidence to vary or add to the terms of an integrated written contract. (2 Witkin, Cal. Evidence (5th ed. 2012) Documentary Evidence, § 60, p. 199.) An integrated agreement is a writing constituting a final expression of one or more terms of the agreement. (*Id.* at § 66, p. 206.)

7

Here the settlement agreement contains a clause stating that the agreement constitutes the entire agreement and understanding between the parties. Thus, it is a fully integrated agreement to which the parol evidence rule applies.

But the trial court did not alter the terms of the settlement agreement. Instead, the court determined that Countrywide substantially performed the terms of the agreement *as it was written*. Determining that Countrywide has substantially performed the agreement as it was written does not violate the parol evidence rule.

IV.

The Serratos contend the doctrine's of impossibility of performance and frustration of purpose do not apply.

Suffice it to say, the trial court did not apply those doctrines. It decided the case on substantial performance.

V.

The Serratos contend that the court erred in ruling they lack standing under the Pooling Service Agreement (PSA) for Loan 25.

When Countrywide sold Loan 25 to BONY, it entered into a PSA. Under the PSA Countrywide warranted to BONY, among other things, that the loan was senior to all other loans, there were no defaults and that Countrywide was not aware of any problems with the loan.

But the Serratos were not parties to the PSA. It made no warranties to them, and they had no standing to enforce it. Nevertheless, the Serratos claim the PSA is relevant on a number of issues.

First, the Serratos claim the PSA is relevant to determining the equities under *Lloyd v. Murphy* (1944) 25 Cal.2d 48. *Lloyd* concerns the doctrine of frustration of purpose. The court did not base its decision on frustration of purpose.

Second, the Serratos argue the PSA is relevant to Countrywide's assertion that its claim against its title insurer is not ripe unless the first trust deed forecloses. The Serratos argue that because Loan 25 is not in the first position, as warranted in the PSA, Countrywide will be required to repurchase the loan from

8

BONY. But the Serratos point to no evidence that BONY has or ever will demand that Countrywide repurchase the loan. Countrywide cannot base a claim against its title insurer on speculation that at some time Countrywide may be required to repurchase the loan.

Third, the Serratos argue the PSA is relevant to "'reasonable apprehension'" under Civil Code section 3412. That section provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." The Serratos claim they have a reasonable apprehension that collection activities will persist as long as Loan 25 remains on BONY's books. But Loan 25 is not void or voidable, Countrywide admitted the collection efforts were a mistake, and the collection efforts have stopped. The PSA is irrelevant.

VI.

The Serratos contend the trial court erred in admitting the testimony of Robert Villegas and Sanford Shatz.

Villegas was the person designated by Countrywide as the person most knowledgeable about the loans. He testified that Countrywide could not provide a new first trust deed, and admitted the foreclosure proceedings were a mistake.

The Serratos point out that Villegas testified that at the time of his deposition, he had no personal knowledge of the loans or the settlement. But a person most knowledgeable is not limited to testifying on personal knowledge in a deposition. Instead, he may testify to the extent of information "reasonably available to the deponent." (Code Civ. Proc., § 2025.230.)

The Serratos argue that at trial Villegas offered new evidence that was not disclosed in his deposition. The court overruled the Serratos' objection that it was "trial by ambush." The Serratos fail to mention that the trial court offered them additional time to respond.

9

The trial court did not err in admitting the evidence.  But even if it did err, that alone would not be grounds for reversal.  The Serratos have the burden of not only showing error, but prejudice arising from the error.  (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 417, p. 476.)  The Serratos make no attempt to show prejudice.

Schatz is an attorney who was employed by Countrywide in its litigation department.  Shatz testified about the contents and legal effect of the PSA.

Shatz testified it took him only two minutes to review the document.  He could not point to the place in the PSA where it said Countrywide had "full delegable authority to modify Loan 25."

But Shatz testified that he worked at Countrywide for a decade, worked on many lawsuits that involved BONY as an investor, and has spoken with the attorney who drafted the PSA.  Under the circumstances, a reasonable trier of fact could conclude Shatz needed only two minutes to review the document.  That Shatz could not at the moment he was testifying point to the place in a lengthy document where a particular phrase is located is hardly fatal to his testimony.

The Serratos fail to show error in admitting Shatz's testimony, and do not even attempt to show prejudice.

VII.

The Serratos contend the trial court's ruling did not address judicial estoppel.

Judicial estoppel applies where the same party has taken two positions; the party was successful in asserting the first position; the two positions are totally inconsistent; and the first position was not taken as a result of ignorance, fraud or mistake.  (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 598.)  Judicial estoppel is an extraordinary remedy that should be applied with caution.  (*Ibid.*)  It is an equitable doctrine, and even when all the elements are present, its application is discretionary.  (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422.)

10

The Serratos claim of judicial estoppel is based on Countrywide's promise in the settlement agreement to write a new loan. The Serratos dismissed their first lawsuit based on that promise. In the intervening years, Countrywide continued to represent it would write a new loan. Countrywide even got a continuance of the instant trial to allow it time to write the new loan.

But Countrywide is not now, nor has it ever, denied that the settlement agreement provides for a new loan. Its current position is that it can substantially comply with the settlement agreement by modifying an existing loan to the same terms as the proposed new loan. Those positions are not inconsistent. Judicial estopped does not apply.

VIII.

The Serratos contend that Countrywide agreed to indemnify them for wrongful collection efforts.

The settlement agreement provides that Countrywide releases the Serratos from any claims for interest, cost of loans or other charges in connection with Loans 25 and 33.

The settlement agreement also contains an indemnity provision as follows: "Defendants and the Serratos warrant and represent to each other that they are the sole and lawful owners of all right, title and interest in and to all Released Matters and that each has not assigned or transferred or purported to assign or transfer to any person or entity any released material or any part or portion of any released material. Defendants and the Serratos shall each indemnify and hold the other harmless from and against any claim, demand, damage, debt, liability, account, cost, expense, lien, action or cause of action based on, in connection with, or arising out of any such assignment or transfer or purported or claimed transfer or assignment."

The Serratos argue they are entitled to indemnity for the costs and attorney fees incurred in obtaining an injunction to stop the foreclosure proceedings

11

on Loan 25.  They request that we remand the matter to determine damages caused by Countrywide's collection efforts.

But the Serratos' complaint alleges causes of action for quiet title and to cancel notes and trust deeds.  It does not allege a cause of action for breach of contract or indemnity.  Nor do the Serratos point to any evidence of the amount of damages or even an offer of such evidence.  Under the circumstances, the trial court did not err in failing to award damages.  There is no basis for a remand.

The judgment is affirmed.  Costs are awarded to respondents.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.


We concur:



YEGAN, J.



PERREN, J.


12

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____


Donald M. Adams, Jr., and Glenn J. Campbell for Plaintiffs and Appellants.

Bryan Cave LLP, Christopher L. Dueringer and Christina Rea for Defendants and Respondents.